RENT CONTROL BOARD OF CAMBRIDGE *vs*. CAMBRIDGE TOWER
CORPORATION & others.[1]

Middlesex. March 4, 1985. — May 13, 1985.

Present: HENNESSEY, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Rent Control*, Controlled rental unit, Removal of unit from market. *Administrative Law*, Regulations.

In light of the amendment of 24 C.F.R. § 221.531 (c), effective June 1, 1983, ending control of rents by the United States Department of Housing and Urban Development for units in projects financed under § 221 (d) (4) of the National Housing Act, the rents for units in a § 221 (d) (4) project in Cambridge were not regulated by the department, the units were not excluded from the Cambridge rent control ordinance under St. 1976, c. 36, § 3 (b) (3) (ii), and, consequently, the units could not be removed from the rental market and converted to cooperative housing without a permit from the rent control board of Cambridge. [812-815]

CIVIL ACTION commenced in the Superior Court Department on May 14, 1984.

The case was heard by *Edith W. Fine*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Irving Fishman* for Irma M. Fishman & others.

*James E. Sandler*, for Cambridge Tower Corporation, joined in a brief.

*Bruce T. Eisenhut* (*Patricia A. Cantor* with him) for the plaintiff.

*Lauren P. Curry, William H. Abrashkin, & Frank I. Smizik*, for Massachusetts Tenants Organization & another, amici curiae, submitted a brief.

*Lawrence B. Simons, Robert E. Litan & Paul W. Kahn*, of the District of Columbia, for National Multi-Housing Council, amicus curiae, submitted a brief.

[1] Irving Fishman, Irma M. Fishman, and Marilyn M. Seligman. Other defendants below are not parties to this appeal. The individual appellants are shareholders of the defendant corporation. We shall refer to the defendant appellants collectively as the defendant.

WILKINS, J. Under a special act authorizing the regulation of maximum rents of "controlled rental units" in the city of Cambridge, "rental units [as to] which a governmental unit, agency, or authority . . . regulates the rents" are excluded from the definition of "controlled rental units." St. 1976, c. 36, § 3 (*b*) (3) (ii). A Cambridge ordinance concerning the removal from the market of controlled rental units, as defined in the rent control act, provides that such units may not be removed from the rental market (e.g., converted to a cooperative) unless the rent control board of Cambridge (board) grants a permit therefor. Chapter 23 of the Code of the City of Cambridge, Ordinance No. 966, § 1 (c). The defendant contends that the rents charged for units in its building on Massachusetts Avenue in Cambridge have been and are subject to regulation by the United States Department of Housing and Urban Development (HUD) and, consequently, the units were and may properly be removed from the rental market without obtaining removal permits from the board. We agree with the Superior Court judge that, in the circumstances, rents at the defendant's premises are not, and at the relevant times were not, regulated by HUD so as to permit the defendant to remove rental units from the market without authorization from the board.

The basic facts are not in dispute. In 1964, an eighty-nine unit apartment building was constructed at 872 Massachusetts Avenue in Cambridge. HUD insured and continues to insure the mortgage on the property under § 221 (d) (4) of the National Housing Act. See 12 U.S.C. § 17151 (d) (4) (1982). The property receives no government subsidy. The rental units were leased to tenants. During the entire period from 1964 to date, HUD and the owner of the premises, from time to time, entered into Regulatory Agreements which established conditions for the property's operation and management. Each of these agreements provided for HUD's approval of the maximum rents charged for leased apartments, and HUD has given its approval, most recently (on the record before us) in January, 1984. On November 15, 1983, the partnership that owned the property conveyed the premises to the defendant corporation, with HUD's approval, as part of the process of converting the

property to a cooperative form of ownership and operation. Stock was issued to the various individual defendants in proportion to the shares assigned to each unit on the premises. Since November 15, 1983, shares and appurtenant proprietary leases to thirty-eight units have been sold. The board first became aware of the conversion of the property to a cooperative in the spring of 1984.

The board commenced this action on May 14, 1984, seeking injunctive relief and a declaration that the residential units owned by the defendant were controlled rental units under the Cambridge rent control act and that, therefore, they could not be removed from the rental market without a removal permit issued by the board. The case was presented to a judge of the Superior Court on cross motions for summary judgment. She concluded that the conversion to a cooperative was an improper removal of dwelling units from the rental housing market and, except as to units sold by the defendant before this action was commenced, the units remained subject to rent control and the removal ordinance. She concluded that only units sold before May 14, 1984, and occupied by their owners (none of whom is a party to this action) would be free from the removal permit ordinance. She left open for future determination the rights of persons who purchased units before May 14, 1984, and do not occupy those units and the rights of one person who took title to a unit after May 14, 1984, pursuant to an agreement made before that date. A judgment was entered declaring that all unsold rental units were controlled rental units, subject to the board's jurisdiction. The judgment directed that units subject to rent control should be registered with the board without prejudice and that any excess of the rents then being charged over rents determined by the board would be placed in escrow pending appeal. The defendant has appealed, and we granted its application for direct appellate review. The board has not challenged by appeal the determination that owner-occupied rental units sold before May 14, 1984, are free from the removal permit requirement.

In April, 1983, HUD issued a final rule amending various regulations, effective June 1, 1983, which, as we shall see, by

its terms ended HUD's control for rents under § 221 (d) (4) of the National Housing Act. The defendant agrees that the removal permit ordinance prohibits removal of controlled rental units from the market without a removal permit, that conversion of such units to cooperative ownership is a removal, and that it obtained no removal permit. The issue is whether on November 15, 1983, when the conversion to cooperative ownership took place, the units on the premises were "controlled rental units." Resolution of this issue turns on whether HUD regulated the rents on that date within the meaning of the word "regulates" in St. 1976, c. 36, § 3 (b) (3) (ii).

We consider first the HUD rule adopted to be effective on June 1, 1983. Subject to exceptions not relevant to this case, the new rule amended 24 C.F.R. § 221.531(c) (1983) to provide that "the mortgagor shall determine the charge for accommodations, facilities, or services offered by the project." 48 Fed. Reg. 16674 (1983). Amended regulation 24 C.F.R. § 221.531(c) (5) (1984) provides that "[a]ny state or local law, ordinance or regulation regulating the rents of projects subject to this paragraph may be preempted only as provided in Part 246 of this chapter." Section 246.6 (24 C.F.R. § 246.6 [1984]) provides for the preemption of local rent control on a case by case basis on HUD's approval of a request of a mortgagor who determines that the rents "as prescribed by the [local] board will not provide a rent level necessary to maintain and operate adequately the project."

In its commentary accompanying the amended regulations, printed with the rule in the Federal Register, HUD stated that the rule "ends control of rents by HUD for mortgages insured under . . . Section 221 (d) (4) of the Act." 48 Fed. Reg. 16670 (1983). HUD noted that its authority to regulate rents under § 221 (d) (4) was discretionary. It stated that a rigid, regulated rent structure was not sufficiently responsive to cost increases and changes in market conditions. "For projects governed by . . . [Section] 221 (d) (4), which [does] not mandate regulation of rents, the Department has determined that there is no basis for concluding that the objective of providing and maintaining economically sound rental housing is better advanced by rent

regulation than without it. Accordingly, the Department is terminating its regulation of rents in such projects." 48 Fed. Reg. 16670 (1983). In discussing comments received concerning the proposed rule prior to its adoption, HUD took note that several commentators urged HUD to adopt a blanket preemption of local rent control for § 221 (d) (4) projects. HUD rejected blanket preemption, expressing its preference for a "policy of preempting local rent control only on a case-by-case basis." 48 Fed. Reg. 16671 (1983).

The language of the amended regulation (24 C.F.R. § 221.531 [c] [1984], quoted above) and the various comments accompanying the rule that amended that regulation leave no doubt that HUD intended mortgagors in § 221 (d) (4) projects to fix the maximum rents to be charged to tenants without HUD's involvement and to permit local rent control to apply to the rents charged, subject to preemption of local rent control only on a case-by-case basis with HUD's approval. This declaration of HUD policy, expressed through a regulation, is definitive and is dispositive of the issue in this case. HUD does not regulate the rents charged by the defendant, and the defendant, therefore, owned controlled rental units on and after June 1, 1983, which could not be removed from the rental market without the board's approval.

Against this explicit declaration of HUD policy contained in a rule adopted according to statutory procedures, the defendant relies on (1) the continuing effect of the various, successive Regulatory Agreements that HUD and the defendant have entered into, under which HUD's approval of maximum rents is called for, and (2) on an internal HUD notice issued on May 24, 1983, by the Assistant Secretary for Housing — Federal Housing Commissioner to various HUD personnel. On the facts of this case, there is no support for the view that HUD by regulation may not properly override contractual provisions concerning the regulation of rents. See *Huard* v. *Forest St. Hous., Inc.*, 366 Mass. 203, 208 (1974); *FHA* v. *The Darlington, Inc.*, 358 U.S. 84, 91 (1958). That is especially true where the regulation reduces the scope of HUD's regulation of the defendant's operations rather than increases it.

The May 24, 1983, notice purports to provide "guidance and instructions to the Field for the implementation of the final regulations" discussed above and adopted to be effective on June 1, 1983. For § 221 (d) (4) projects of the type involved in this case, the notice provides that the owner can request and obtain an amendment to its Regulatory Agreement "which will delete the requirement that HUD approve rent, charges or fees." The notice continues: "Owners may decide that they do not want to have their rents decontrolled but would rather have the rents approved by HUD . . . in which case no amendment to the Regulatory Agreement is required." This purported authorization of an individual option in each owner of a § 221 (d) (4) project to determine whether to continue HUD approval of rents is directly contrary to the stated purpose of the amendment to HUD regulations adopted to be effective June 1, 1983. The motion judge noted that the only apparent purpose of such an election to continue HUD approval of rents was to avoid local rent control. The defendant offers no other rationale for such a provision. However, the relevant HUD regulation and indeed the notice itself provide for HUD's preemption of State and local rent control only on special application by a mortgagor under 24 C.F.R. § 246 (1984).

An internal agency notice, although owed some deference, does not have the force of law and is not binding on courts. See *Haley* v. *Commissioner of Pub. Welfare, ante* 466, 473 (1985); *Daughters of Miriam Center for the Aged* v. *Mathews,* 590 F.2d 1250, 1258 (3d Cir. 1978). Cf. *Skidmore* v. *Swift & Co.,* 323 U.S. 134, 140 (1944) ("rulings, interpretations and opinions of the [responsible agency have] . . . power to persuade, if lacking power to control"). An agency notice or announcement may not flatly contradict an agency regulation adopted under statutory procedures. See *Haley* v. *Commissioner of Pub. Welfare, supra* at 474, and cases cited; *Fiorentino* v. *United States,* 607 F.2d 963, 968 (Ct. Cl. 1979), cert. denied, 444 U.S. 1083 (1980). Thus, the notice cannot and does not lawfully preserve to a mortgagor the option to avoid rent control by continuing in effect the rent approval provisions

of the Regulatory Agreement between HUD and the mortgagor.[2]

In any event, even if the agency notice were to be recognized as valid and controlling, it provides an option to the mortgagor to avoid HUD control over rents by permitting the mortgagor to opt out of the process at any time. We agree with the motion judge that such a one-way street is not "regulation" of rents within the meaning of the Cambridge rent control act. Thus, the agency notice has no force of law because it directly contradicts the agency's own rule, and, even if it were valid, the notice does not call for the regulation of rents of the character contemplated by the Legislature in enacting the Cambridge rent control act.[3]

The defendant argues three issues not dealt with by the motion judge. The defendant pleaded laches against the board. There is nothing in the record to support such a claim, even if laches would apply to such a public agency in these circumstances. The defendant raised the other two issues now argued on appeal only after the motion judge had entered an order for judgment. There is no merit to the defendant's claim that the Cambridge removal permit ordinance applies only to units that were subject to rent control on the date on which that ordinance was adopted, and nothing in *Flynn* v. *Cambridge*, 383 Mass. 152, 156 (1981), should be read to the contrary.

The final argument is that, on and after June 1, 1983, some of the units were not rented or offered for rent for dwelling purposes and were deliberately left vacant. The record does not

---

[2] The notice contains an additional inconsistency. According to the notice, "[o]wners [of Section 221 (d) (4) projects] may decide that they wish to have their rents determined under [Section] 207.19 (e) (2) (ii)," an option the defendant claims to have selected in its most recent Regulatory Agreement. Yet the Commentary in the Federal Register clearly states, "[Section] 207.19 (e) (2) (ii) does not apply to Section 221 (d) (4) projects." 48 Fed. Reg. 16672 (1983).

[3] HUD's rent regulation of § 221 (d) (4) projects would not, of its own force, preempt local rent control statutes. Cf. *Kargman* v. *Sullivan*, 552 F.2d 2, 13 (1st Cir. 1977) (§ 221 [d] [3] projects).

show that any unit was not rented or offered for rent for the entire period from June 1, 1983, to the date of the hearing on the cross motions for summary judgment. The omission is not important because each unit was a rental unit, although not a controlled rental unit, both prior to and after June 1, 1983. A Cambridge landlord or owner may not properly remove a rental unit from the rental market without board approval simply by declining to offer it for rent once it becomes vacant. Unlike that in Boston (*Church* v. *Boston*, 370 Mass. 598 [1976]), rent control in Cambridge does not include provision for vacancy decontrol.

*Judgment affirmed.*