RENT CONTROL BOARD OF CAMBRIDGE *vs.* THE 375
ASSOCIATES LIMITED PARTNERSHIP.

Middlesex. November 7, 1985. — February 10, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, & LYNCH, JJ.

*Rent Control,* Controlled rental unit, Federal regulation.

The Rent Control Board of Cambridge retained jurisdiction under St. 1976,
    c. 36, § 3 (*b*) (3) (ii), to control the rents for units in a certain project
    in Cambridge refinanced with a mortgage coinsured but not subsidized
    by the United States Department of Housing and Urban Development
    under § 221 (d) (4) of the National Housing Act where the department,
    through the applicable Federal regulatory scheme, did not "regulate" the
    rents for those units within the meaning of c. 36, § 3 (*b*) (3) (ii),
    authorizing the board's regulation of maximum rents of "controlled rental
    units" and excluding from the definition of "controlled rental units" all
    "rental units [as to] which a governmental unit, agency, or authority
    . . . regulates the rents." [699-701]

CIVIL ACTION commenced in the Superior Court Department
on January 16, 1985.

The case was heard by *John Paul Sullivan,* J., on a motion
for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*James E. McGuire (James W. Stoll* with him) for the defend-
ant.

*Stephen B. Deutsch (Andrew Z. Schwartz* with him) for the
plaintiff.

LYNCH, J. The defendant, owner of the Crimson Court
Apartments in Cambridge,[1] appeals from a judgment of the
Superior Court declaring that the plaintiff, Rent Control Board
of Cambridge (board), retained jurisdiction to control the rents

---

[1] The Crimson Court Apartments consist of sixty residential units located
at 375-375A Harvard Street in Cambridge.

of the defendant's apartments under St. 1976, c. 36, § 3 (*b*) (3) (ii). That statute, which authorizes the regulation of maximum rents of "controlled rental units" in the city of Cambridge, excludes from the definition of "controlled rental units," all "rental units [as to] which a governmental unit, agency, or authority . . . regulates the rents." The defendant argues that its apartments are subject to regulation by the United States Department of Housing and Urban Development (HUD) and as such are exempt from rent control by the board. We conclude to the contrary and affirm.

There are no material facts in dispute. On November 15, 1984, the defendant purchased the Crimson Court Apartments. The purchase was financed by the proceeds of a mortgage loan by Colonial Mortgage Service Company, doing business as Colonial National Mortgage Company (Colonial Mortgage). The loan to the defendant was guaranteed by HUD pursuant to § 223(f) and § 207 of the National Housing Act, 12 U.S.C. § 1715n(f) (1982), § 1713(b)(2) (1982 & Supp. II 1984). As required by HUD, the defendant agreed that the apartments be operated in accordance with HUD regulations. The regulatory agreement provides that the defendant cannot charge rents "in excess of those approved in writing by the mortgagee [Colonial Mortgage] in accordance with the administrative requirements of [HUD]."

In November, 1984, the defendant notified the tenants that their units were no longer subject to Cambridge rent control.[2] The notice offered new tenancies, with rents in excess of the maximum rents established by the board. The defendant rented at least one unit at the higher rates. The board then brought this action in the Superior Court.

The board sought a declaration that the apartments were subject to Cambridge rent control, and an injunction to enjoin the defendant from charging rents in excess of those approved

---

[2] Crimson Court Apartments have been subject to rent control since 1970. The defendant sent a letter to the board notifying it that the defendant considered the property exempt from local rent control as of purchase date, November 15, 1984.

by the board. Thereafter the board moved for a preliminary injunction, and the defendant moved for summary judgment. Since the parties stipulated that there was no dispute of material fact, the hearing on the motion for a preliminary injunction was consolidated with a determination on the merits pursuant to Mass. R. Civ. P. 65 (b) (2), 365 Mass. 833 (1974). In a memorandum opinion dated March 28, 1985, the judge ruled that the Crimson Court Apartments were subject to Cambridge rent control. Judgment was entered and the court granted the requested permanent injunction.

The Federal regulatory scheme which implements § 223 (f) and § 207 of the National Housing Act is the starting point of the analysis. First, 24 C.F.R. § 207.17 (1985) defines an "eligible mortgagor" under the National Housing Act as one who is "regulated or restricted by [HUD] as to rents." Under the regulations, then, the defendant, as such a mortgagor, is subject to HUD regulation. The form of that regulation is specified by 24 C.F.R. § 207.18 (1985), which provides that (under certain conditions applicable here) the mortgagor will enter a regulatory agreement with the mortgagee for the term of the mortgage. Pursuant to that section, the defendant entered into the November 15, 1984, regulatory agreement.

The regulatory agreement provides that rents must be approved by the mortgagee, here Colonial Mortgage, "in accordance with the administrative requirements of [HUD]." Title 24 C.F.R. § 207.19 (e) (1985) provides that: "No charge shall be made by the mortgagor for the accommodations (rents), facilities or services offered by the project[3] in excess of those approved by [HUD]." That section also establishes the way rents are to be calculated. In particular, 24 C.F.R. § 207.19 (e) (3) (1985) provides for the calculation of appropriate rents when the units have been subject to rent control: "Any state or local law, ordinance or regulation regulating the rents of

---

[3] The record does not demonstrate that the Crimson Court Apartments are a "project" under the regulations. Both parties, HUD, and the judge, however, have assumed this is so, and we reach the merits of the case on that assumption.

projects subject to this paragraph may be preempted only as provided in Part 246 [24 C.F.R. § 246] of this chapter." Title 24 C.F.R. § 246.1 (a) (1985) provides that: "The regulation of rents from [unsubsidized[4] insured projects like the Crimson Court Apartments] is preempted under these regulations only when the Department determines that the delay or decision of the local rent control board . . . jeopardizes the Department's economic interest in a project covered by [Subpart B]." The regulations further provide that local rent control levels will prevail in the normal course: "The Department will generally not interfere in the regulation of rents by a rent control board . . . for unsubsidized projects with mortgages insured . . . by HUD." 24 C.F.R. § 246.5 (1985) [Subpart B].

To seek preemption under 24 C.F.R. § 246.5, a mortgagor must first apply to a local rent control board for an increase, and only then, if the increase is either not granted or is insufficient, can HUD preemption be sought. 24 C.F.R. § 246.6 (a), (b) (1985).[5] After suit was filed, the defendant sought National Housing Act preemption,[6] even though the board granted an increase (less than that which was sought).

The issue is whether or not HUD "regulates" the rents at the Crimson Court Apartments within the meaning of St. 1976, c. 36, § 3 (*b*) (3) (ii), under the Federal regulatory scheme through which HUD can choose to preempt local rent control, but only in unusual cases, and on a case-by-case basis. The defendant argues that our recent decision in *Rent Control Bd. of Cambridge* v. *Cambridge Tower Corp.*, 394 Mass. 809 (1985), "mandates a finding that the rents at Crimson Court Apartments are regulated by HUD within the meaning of Section 3 (b) (3) (ii) of Chapter 36." To the contrary, that case supports our holding that the Crimson Court Apartments are subject to Cambridge rent control.

---

[4] The defendant receives no Federal subsidy for these apartments.

[5] The application to HUD has various other requirements as well. See 24 C.F.R. §§ 246.7, 246.8 (1985).

[6] The record does not reflect a final HUD resolution of that matter.

First, the defendant argues that, although the applicable Federal regulations do not preempt local rent control, St. 1976, c. 36, § 3 (*b*) (3) (ii), exempts the Crimson Court Apartments because the applicable Federal regulations, and the regulatory agreement, provide that rents may be charged only in accordance with those Federal regulations. That argument, however, overlooks the obvious interplay between the Federal regulations and c. 36, § 3 (*b*) (3) (ii). The defendant essentially suggests that we construe c. 36, § 3 (*b*) (3) (ii), to mean that Federal law "regulates" rents even when it provides that rents shall be set by local boards.

In *Rent Control Bd. of Cambridge* v. *Cambridge Tower Corp., supra* at 813-815, we rejected a similarly narrow reading of the word "regulates." In that case we held that the Federal regulations implementing § 221 (d) (4) of the National Housing Act [23 C.F.R. § 221.531 (c) (1984), see 12 U.S.C. § 1715*l*(d)(4) (1982)] did not constitute regulation within the meaning of St. 1976, c. 36, § 3 (b) (3) (ii). The prior HUD regulation [24 C.F.R. § 221.531(c) (1983)] was amended in 1983 to provide that "the mortgagor shall determine the charge for accommodations, facilities, or services offered by the project." 48 Fed. Reg. 16674 (1983). 24 C.F.R § 221.531 (c) (1984). The new regulation was specifically designed to end HUD's discretionary rent control of properties mortgaged under § 221(d)(4) of the National Housing Act. 48 Fed. Reg. 16670 (1983). See *Rent Control Bd. of Cambridge* v. *Cambridge Tower Corp., supra* at 812, 813. Amended regulation 24 C.F.R. § 221.531 (c) (5) (1984) provided that "[a]ny state or local law, ordinance or regulation regulating the rents of projects subject to this paragraph may be preempted only as provided in Part 246 of this chapter [24 C.F.R. § 246 (1984)]." The "dispositive" Federal regulations in *Rent Control Bd. of Cambridge, supra* at 813, provided that rents be set by mortgagors, subject to local rent control and subject to potential HUD preemption under Part 246.[7] That situation is parallel to

---

[7] Even if the internal agency notice, which purported to allow mortgagors to choose to be regulated by HUD, had the force of law (which we held it did not) "such a one-way street is not 'regulation' of rents within the meaning

the case at hand, and we follow *Rent Control Bd. of Cambridge* by holding that the applicable Federal regulatory scheme does not "regulate" rents in this case within the meaning of c. 36, § 3 (*b*) (3) (ii).[8]

Second, the defendant argues that since *Rent Control Bd. of Cambridge* v. *Cambridge Tower Corp.* held that the *amended* regulations did not "regulate" within the meaning of c. 36, § 3 (*b*) (3) (ii), the prior regulations, allegedly similar to those applicable here, did so "regulate." The short answer is that the only issue considered in *Rent Control Bd. of Cambridge* was whether the amended regulations triggered the exemption of St. 1976, c. 36, § 3 (*b*) (3) (ii). *Id.* at 812. We did not consider the prior regulatory scheme in any comprehensive way in *Rent Control Bd. of Cambridge,* nor is anything in that holding predicated on the premise that the prior Federal regulatory scheme in fact "regulated" the rents. Furthermore, it is unnecessary to consider the prior regulatory scheme since the amended regulatory scheme in *Rent Control Bd. of Cambridge* tracks the one at hand so as to make that case dispositive.

*Judgment affirmed.*

---

of the Cambridge rent control act." *Rent Control Bd. of Cambridge* v. *Cambridge Tower Corp.,* 394 Mass. 809, 815 (1985).

[8] The defendant argues that the plain and unambiguous meaning of the word "regulates" in the Cambridge rent control act mandates the opposite conclusion, branding any other reading "judicial activism." However, nothing could be plainer than that HUD is *not* "regulating" rents when it specifically defers to local rent control boards. The only sense in which HUD regulates rents is by providing for regulation by local rent control boards (except under unusual circumstances). The plain meaning of the word "regulate" does not incorporate such an arrangement. We read "regulates" to mean actively and affirmatively regulating.