RENT CONTROL BOARD OF CAMBRIDGE *vs.* CAMBRIDGE TOWER
CORPORATION & others.*

'Middlesex.  December 5, 1986. — January 28, 1987.

Present: GRANT, PERRETTA, & KASS, JJ.

*Rent Control,* Controlled rental unit, Removal of unit from market.

In an action seeking injunctive relief and a declaration that certain residential
   units in an apartment building were controlled rental units, no equitable
   or other considerations warranted a judgment, in effect, exempting pur-
   chasers of the units from the operation of the Cambridge rent control
   act, St. 1976, c. 36, and from city ordinance provisions requiring that
   a permit be obtained from the rent control board of Cambridge before
   the units could be removed from the rental market. [77-78]

CIVIL ACTION commenced in the Superior Court Department
on May 14, 1985.

Following review by the Supreme Judicial Court, 394 Mass.
809 (1985), with respect to an earlier phase of the case, further
proceedings were had before *Herbert Abrams, J.*

*Patricia A. Cantor* for the plaintiff.

*James E. Sandler* for Cambridge Tower Corporation.

*Lawrence R. Opert* for Stephanie Mitchell.

*Lewis S. Victor,* for Richard Moody & others, was present
but did not argue.

GRANT, J. Subsequent to the decision of the Supreme Judicial
Court in *Rent Control Bd. of Cambridge* v. *Cambridge Tower
Corp.,* 394 Mass. 809 (1985), a second judge of the Superior
Court issued an order of notice to the second and third categories
of owners of units in the building (see 394 Mass. at 811),

---

* This decision originally appeared on January 28, 1987, as an order
under rule 1:28 of this court, as most recently amended, 10 Mass. App.
Ct. 942 (1980). See 23 Mass. App. Ct. 1108. Further appellate review was
denied on April 1, 1987. See 399 Mass. 1104.

whose rights had not been determined by the first judge of the Superior Court.[1] The second category is comprised of twenty-one persons who purchased their units prior to the commencement of this action (on May 14, 1984) but who had not occupied them by the time of the first judge's decision (on July 17, 1984). The third category is comprised of one person who purchased a unit after May 14, 1984, with knowledge of the first judge's decision and who immediately occupied his unit. All but one of the twenty-two persons appeared, and each was permitted to intervene as a party defendant.

The interveners submitted affidavits reciting the facts applicable to their particular situations. The objective of all the interveners was to persuade the second judge that they should be accorded the same status under St. 1976, c. 36 ("An Act enabling the city of Cambridge to continue to control rents and evictions") and the removal permit ordinance (c. 23, Ord. 966) as the first judge had accorded to the first category of owners (note 1, *supra*) in her decision. After hearing, the second judge lumped all the interveners into a single group and entered a decision by which he purported, in effect, to exempt everyone in the group from the operation of c. 36 and Ord. 966 long enough to dispose of their units in an assumed free and open market. The rent control board (board) appealed.

Two things must be understood at the outset of any discussion of the present appeal. First, the net effect of the second judge's decision is to create in favor of twenty-two individuals an additional exception to the operation of the rent control act which the Legislature did not see fit to include in the St. 1976, c. 36, § 3(b), definition of "[c]ontrolled rental units" and an additional exemption from the operation of the implementing removal permit ordinance (see *Flynn* v. *Cambridge,* 383 Mass. 152 [1981]) which the Cambridge city council had not seen fit to provide. No public interest is served by the decision. Contrast *Kelloway* v. *Board of Appeal of Melrose,* 361 Mass.

---

[1] The first category of owners, as determined by the first judge, is comprised of persons who purchased and occupied their units prior to the commencement of the present action and who continued to occupy them at the time of the first judge's decision.

249, 253-258 (1972). Just the reverse, the decision thwarts the clear public policy in favor of maintaining a stock of affordable rental housing in Cambridge.

Second, there is nothing in the earlier appeal which supports any notion (a) that the Supreme Judicial Court affirmed so much of the first judge's decision as purported to exempt the first category of owners from the operation of the removal permit ordinance, (b) that the court decided that the second and third categories of owners are entitled to the same treatment which was accorded to the first category, or (c) that the second and third categories have *any* rights in the circumstances. To the contrary, the court was careful to note that the board had not appealed from the earlier decision (394 Mass. at 811) and that none of the members of the first category had even been made a party to the action (*ibid.*).[2]

The second judge found what he regarded as equities in favor of the interveners. Much of his reasoning is grounded on his finding that "no owner could have known that the [b]uilding was subject to the jurisdiction of the [r]ent [b]oard," which was taken almost verbatim from the findings of the first judge. That finding is "clearly erroneous" within the meaning of Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974) (see *Marlow* v. *New Bedford,* 369 Mass. 501, 508 [1976]; *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 160-161 [1977]), because it is clear from the face of the opinion in the earlier appeal that all the essential facts bearing on the question whether the building was subject to c. 36 and Ord. 966 were matters of public record. 394 Mass. at 811-813. More to the point would have been a finding that all the interveners had to have known that the rents were controlled by either HUD or the board and that they were simply surprised to learn that it was the latter which had jurisdiction.

The problems in this case appear to have arisen out of the fact that none of the interveners sought independent legal advice as to whether the unit(s) he intended to purchase was (were) subject to the jurisdiction of the board. Some of the interveners

---

[2] That continues to be the case.

appear to have relied on the representations of the developers or their marketing agent, for whom the board was not responsible. It does not appear that any of the interveners ever sought an advisory opinion or a formal ruling from the board. Some of the interveners assert in their affidavits that they relied on representations of unidentified employees of the board. The judge did not so find. The only findings he did make on this subject do not warrant an inference that any responsible officer or employee of the board represented to any of the interveners that any unit in the building was not subject to the jurisdiction of the board.

The present record affords no more basis for a finding of laches on the part of the board than did the record on the earlier appeal. See 394 Mass. at 815. Counsel for the interveners ackowledged at the argument before us that there is no basis for working an estoppel against the board. If we were to assume for purposes of decision that the judge had a measure of discretion as to where to draw a line between enforcement and nonenforcement (see *Hebb* v. *Lamport,* 4 Mass. App. Ct. 202, 209-210 [1976], and cases cited), we would have to conclude that the measure was exceeded in this case.

The orders and judgment which were entered on September 16, 1985, are reversed, and a new judgment is to be entered which declares that all the units purchased by the interveners are in all respects subject to the provisions of St. 1976, c. 36, and those of Ord. 966 and which directs the interveners to register their units with the board under the provisions of St. 1976, c. 36, § 6(b).

*So ordered.*