Larkin, J.
This case raises questions of statutory construction impacting the jurisdictional ambit of a municipal rent control board in the context of contentions that the presence of putative financial subsidies deprive the board of regulatory potencies.[4]
The record is devoid of factual dispute and, in relevant part, discloses the following:
The plaintiffs are the owner and manager of an apartment complex in the Town of Amherst known as “Crown Point Apartments” (hereinafter “Crown Point”). Defendants are the members of the Amherst Housing Review Board (hereinafter the “Board”) as well as the Town of Amherst which was also joined as a defendant in the instant proceeding. On a petition presented by ten tenants of the Crown Point Complex, the Board, in a consolidated review, modified the rents for all (a total of forty) two-bedroom apartments in the complex. Crown Point appealed the Board’s findings and decision to the Northampton District Court. In a motion for partial summary judgment, Crown Point claimed that the Board “lacked jurisdiction over apartments rented by tenants receiving rental assistance.” In response, the Board opposed the motion on two grounds arguing that: (a) Crown Point had failed to raise the issue of jurisiction before the Board and thereby had “waived” the right to raise the issue on judicial review and (2) the fact that certain rental units were occupied by tenants who received rental assistance did not divest the Board’s overall jurisdiction over the affected apartments.
In addressing these issues, the District Court judge weighing “the potential injustice to the plaintiffs (Crown Point) if the issue (of jurisdiction) is not heard against the lack of prejudice to the defendants (Board) if the issue (of jurisdiction) is heard” opted to hear Crown Point’s claim and address the merits of the principal question. .
*52 In reaching this issue — the'insulating impact of the presence of subsidies on the Board’s jurisdiction — the District Court ruled that “(t)he enabling act and an EOCD (Executive Office of Communities & Development) memorandum indicate a legislative intent that (rent) subsidies attach to the rental unit and the Board is not to. have jurisdiction over such units.” Having made this determination, the District Court proceeded to find that there was “no genuine issue as to any material fact and that the plaintiffs (Crown Point) are entitled to judgment as a matter of law.” The Court, accordingly, allowed Crown Point’s Motion for Partial Summary Judgment and vacated the Board’s decision. Here on appeal we are faced with the same issues and we will address them seriatim.
At the outset, we turn to the question of whether the District Court erred in allowing Crown Point to raise the issue of the “jurisdiction” of the Board where the plaintiffs failed to raise this issue, in the first instance, before the Board. We agree with the District Court that it was within her discretion to consider the issue on the special facts of record present here.
According to. the Amherst By-law, “(t)he Court shall review and decide such action (of the Board) pursuant to the standards set forth in Paragraph 7 of Section 14, Chapter 30A of the General Laws.” Amherst Ma. By-Law, Ch. 72, §6(a) (June 6,1986). In relevant part, the By-Law provides:
The court may affirm the decision of the agency (rent control board) or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is —
(a) In violation of constitutional provisions; or
(b) In excess of the statutory authority or jurisdiction of the agency; or
(c) Based upon an error or law;.. .Mass. Gen. Laws Ann. Ch. 30A, Sec. 14 (West 1989).
The Board contends that Crown Point’s failure to raise the issue of jurisdiction at the administrative level (before the Board) effects a waiver of the right to raise that issue on appeal. We disagree.
In this area, it is clear that the general rule is that “(a) party is not entitled to raise arguments on appeal that he could have raised, but did not raise, before the administrative agency (the Board).” Albert v. Municipal Court of the City of Boston, 388 Mass. 491, 493 (1983) (quoting Shamrock Liquors, Inc. v. Alcoholic Beverages Control Comm’n, 7 Mass. App. Ct. 333, 335 (1979)). However, there is a line of authority which holds that: “(T)here may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed not passed upon by the court or administrative agency below.”Id. at 494. The general rule “has particular force where the other party may be prejudiced by the failure to raise the point below.” Id. at 494. Here the trial court expressly noted that “(t)he defendants (Board) neither claim prejudice nor lack of evidentiary input.” Having made this determination, the trial judge then conducted a balancing test and weighed “the potential injustice to the plaintiffs (Crown Point) if the issue is not heard against the lack of prejudice to the defendants (Board) if the issue is heard.” In weighing the relative equities to the parties, in the entire context of the record, the trial court obviously determined that justice would be better *53 served by a prompt decision of the essential issue in the case. On this record, we cannot say that this determination was erroneous.
While Crown Point’s belated challenge to the “jurisdiction” of the Board obviously raises concerns that attacks “mounted ostensibly under the banner of jurisdiction’ have been used to.. .abort.. .legitimate agency (rent control board) undertakings,” we believe that the core issue here is a “general one whose settlement might be of value to many in addition to the immediate parties,” and involves a matter of statutory interpretation upon agreed facts. Aronson v. Brookline Rent Control Board, 19 Mass. App. Ct. 700, 703 (1985). For all of these reasons, we hold that the trial judge did not err in considering the jurisdictional issue for the first time on appeal.
We turn then to the principal issue in the case, the question of the jurisdictional ambit of the Amherst Housing Review Board. More specifically, the determinative issue is whether the Amherst Housing Review Board retains overall jurisdiction over a housing complex in which certain rental units are occupied by families that benefit individuallyfrom various housing assistance programs.
In addressing this issue we turn first to the relevant Municipal By-Law of the Town of Amherst which provides that: “The (Amherst Housing Review) board shall have jurisdiction... over all rental units in the Town of Amherst excent.. .rental units which a governmental unit, agency, or authority either owns, operates, regulates, insures the mortgage of, finances, or subsidizes...” Amherst, Ma. By-Law, Ch. 72, §3(g) (June 6,1986) (emphasis added).
Crown Point contends that rental units occupied by tenants who receive housing assistance are exempt from the jurisdiction of the Board and further argues that tenants who receive housing assistance under federal or state programs are “subsidized” within the meaning of the statute. We disagree with Crown and with the District Court in this interpretation of the by-law.
In our analysis, we begin with basic and well settled principles of statutory construction — principles codified and adumbrated explicitly in our own General Laws:
Statutory Construction
In construing statutes the following rules shall be observed, unless their observance would involve a construction inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute:. . .Words and phrases shall be construed according to the common and approved usage of the language; but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in law shall be construed and understood to such meaning. Mass. Gen. Laws Ann. c. 4, §6 (West 1989).
It is clear that this provision mandates a choice of construction which accords deference to the “plain meaning” of ordinary language. Adhering to this principle, words of ordinary consequence should receive their usual meaning and interpretation consonant with the usages of common understanding. We start then with the words of the statute and seek to effectuate their “plain meaning.”
Textural scrutiny demonstrates that the relevant statute exempts from the jurisdiction of the Board “rental units which a governmental unit. . .subsidizes.” Amherst, Ma. By-Law, ch. 72, §3(g) (June 6, 1986). The By-Law further provides the definition of rental unit as follows:
(A)ny building, structure, or part thereof, or land appurtenant *54 thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes, including houses, apartments, rooming or boarding house units, and other properties used for living or dwelling purposes, together with all services connected with the use or occupancy of such property. Amherst, Ma. By-Law ch. 72 § 2(a) (June 6; 1986).
It follows then that if the rental units at Crown Point are “rental units that a governmental unit. . owns, operates, regulates, insures the mortgage of, finances, or subsidizes. . ,” the rental units are exempt from the jurisdiction of the Board. However, the decisive and more elusive question is whether the mere presence of tenants who are themselves “subsidized;” i.e. receiving rental assistance, through a federal or state program, in those “rental units” brings the exemption into operation and divests the Board from the exercise of regulatory jurisdiction over affected units. We agree with the District Court judge that a surface reading of the statute might give rise to a perception under which “it appears that the rental unit is receiving the subsidy,” and, accordingly, would be jurisdictionally immunizing vis a vis the Board. However, we believe that the District Court judge should have placed more emphasis on the distinction between subsidized rental units (structures) and subsidized tenants (persons). In sum, we disagree with the District Court judge that “rental units occupied by tenants receiving rental assistance are subsidized rental units.” For reasons developed below, we conclude that individually subsidized tenants who occupy rental units should not be viewed as “rental units which a governmental unit. . .subsidizes. . .” within the meaning of the statute. Our conclusion in this regard is reinforced by cases arising in analogous contexts in the rent control area.
In Rent Control Bd. vs. 375 Associates Ltd., 396 Mass. 696, 488 N.E. 2d 754 (1986), the Supreme Judicial Court was faced with the statutory construction of a similar by-law in Cambridge. In Rent Control Bd., the issue was “whether or not H.U.D. ‘regulates’ the rents within the meaning of. . .(the statute)” thereby preempting the local rent control board. Id. at 756. Under facts similar to the instant case, an apartment building owner claimed that its apartments were exempt from the jurisdiction of the Cambridge Rent Control Board because the units were subject to regulation by the United States Department of Housing (H.U.D.). The Supreme Judicial Court rejected this “narrow reading of the word ‘regulates’ ” and held that the “Federal regulatory scheme does not ‘regulate’ rents. . .within the meaning of (the statute).” Id. at 756.
We believe that the rationale by which the Supreme Judicial Court reached its result is especially helpful in construing the statute in the instant case. Indeed, the Amherst Housing Review Board By-Law relevant here is very similar to the Cambridge By-law which was before the Court in Rent Control Bd. There the Cambridge statute authorized the Cambridge Rent Control Board to regulate “maximum rents of ‘controlled rental units’ in the City of Cambridge, (and) excludes.. .all rental units (as to) which a governmental unit, agency, or authority.. .regulates the rents.” Id. at 754. In construing the statute, the Court turned to the “Federal regulatory scheme” for guidance. Id. at 756. The federal regulations provided that “(t)he Department will generally notinterfere in the regulation of rents by arentcontrol board, .for unsubsidized projects with mortgages insured.. .by HUD.” id. at 755 (emphasis added). Focusing on this provision, the Court noted that “(t)he defendant (owner of the apartment building) receives no Federal subsidvfor these apartments.” Id. at 755, n.4 (emphasis added). We believe that relevant to this result was a clear *55 recognition and construction in which the term “subsidy was deemed as running to the apartment owners and to the project itself not to the tenants. In short, it was relevant to the result and rationale that “subsidized projects” were indeed exempt from the jurisdiction of the rent control board. However, it was equally clear that tenants who received rental assistance in their individual capacities would not bring the exemption into operation. And, in adopting this approach, we believe the Supreme Court’s decision, by analogy, supports a result in which a Rent Control Board maintains its jurisdiction over rental units occupied by tenants receiving rental assistance, the situation before the Court here.
In another case, Rent Control Board of Cambridge v. Cambridge Tower Corp., 394 Mass. 809, 477 N.E. 2d 1011 (1985), a similar statute was subjected to a similar jurisdiction challenge as plaintiffs mount in the instant case. Again, the Supreme Judicial Court held that rents at the apartment building “were not regulated by HUD so as to permit the defendant (apartment owner) to remove” the rental units from the jurisdiction of the Rent Control Board. Id. at 1012. Central to its decision, the Court noted that “ftlhe property receives no government subsidy.” Id. at 1012 (emphasis added). In our view, this result and rationale further supports the argument that the “subsidies” contemplated by the statute which would oust a rent control board from its regulatory function would be those applying organically to the property and not subsidies which, ad hoc and episodically, might fortuitously run to individual tenants.
In Charlesbank Apartments, Inc. v. Boston Rent Control, 379 Mass. 635 (1980), an apartment owner sought a declaration that it was exempt from the jurisdiction of the Boston Rent Control Board. The rent control ordinance there in question, again, bears a striking resemblance to the Amherst By-Law at issue in the instant case.
There, according to the Court:
(the ordinance) embraced broadly Boston’s housing accommodation(s) (as defined), but then exempted housing accommodations which the United States or the Commonwealth of Massachusetts or any authority created under the laws thereof either owns, or operates, or finances or subsidizes or insures the mortgage thereon, or regulates, the individual rents thereof; except the housing accommodations subsidized under section 202, 221(d), or 236 of the National Housing Act as amended. Id. at 1079.
To adjust the relevance of Charlesbank to the present case, a bit of background of the facts of record there maybe useful. In 1968, the apartment owner had secured mortgage insurance “furnished under Sec. 221 (d) (3) of the National Housing Act.” Id. at 1079. The apartment owner resisted the application of the exception to the exemption to his apartment. The apartment owner argued that “the 1968 transaction was insurance, not a subsidy” and that he should be outside the strictures of the Boston Rent Control Board, applying the nuances and interstices of the above cited regulatory and exemptive scaffolding. Id. at 1079. In rejecting this contention the Supreme Judicial Court held that: “(t)his argument seeks a narrow definition of subsidy as something on the order of an actual grant of public money to a private interest and opposes a more ample definition.. .which would take in other forms of public aid to private transactions.” Id. at 1079.
A review of the definition of “subsidy” in the latest edition of Blacks Law Dictionary reinforces this view. A subsidy is defined as:
(a) grant of money made by government (National Housing Act) in *56 aid of the promoters (apartment owners) of any enterprise work, or improvement in which the government desires to participate, or which is considered a proper subject for government aid, because such purpose is likely to be of benefit to the public. Blacks Law Dictionary 1280 (5th ed. 1979) (emphasis added).
In our view, both the Supreme Judicial Court and Black view “subsidies” as running to the apartment owners in furtherance of a public purpose. Notably, the Court found that the federal regulations refer to the mortgage insurance program as: “federally subsidized housing.. .(and) speaks of buildings, etc., ‘constructed with federal financial assistance.’ "Id. at 1080 (emphasis added). In our view, this interpretation is entirely consistent with the Amherst Bylaw’s definition of rental unit as “any building, structure. .. .” Amherst, Ma. By-Law Ch. 72 §2(a) (June 6, 1986). Thus, under a parity of reasoning, we believe that it follows that if the construction of the building itself is subsidized by a governmental unit or agency, then the rental unit is indeed exempt from the jurisdiction of the rent control board. However, we believe that it is equally compelling that the mere occupancy of the rental units by tenants receiving rental assistance should not be deemed a “rental unit which a governmental unit.. .subsidizes” either from the aspect of logic, principle or precedent. Amherst Ma. By-Law Ch. 72, §3(g) (June 6, 1986). We believe that it is clear from the decision of the Supreme Judicial Court, supported by authoritative construction of federal regulations that jurisdictionally immunizing “subsidies” within the meaning of the statute run to the construction of building not the mere presence of rent assisted tenants.
We believe that Zoning Board of Appeals of Wellesley v. Housing Appeals Committee, 385 Mass. 651 (1982), lends further support to the proposition that “subsidies” as contemplated by the statute run to the construction of projects and not to the individualized persons housed in those projects where the determinative issue is the regulatory deflecting desiderata of the statutory scheme at issue.
Under relevant regulatory guidance, low or moderate income housing is defined as “housing subsidized by the federal or state government under any program to assist the construction of low or moderate income housing. . ."Id. at 875 (quoting Mass. Gen. Laws, c. 40B, §20) (emphasis added). In Zoning Board of Appeals of Wellesley, the Supreme Judicial Court found that “low or moderate income housing must be subsidized under a program whose purpose is to aid the construction of low or moderate income housing as defined.” Id. at 875 (emphasis added). The Court further determined that the subsidies, as contemplated by the statute, run to the construction of low or moderate income housing and are separate and distinct from housing assistance that runs to tenants. In reviewing the legislative background of the regulatory scheme, in Zoning Board the Court found pursuasive the fact that “(t)he Legislature established MHFA (Mass. Housing Finance Agency) to provide mortgages to projects (a subsidy). . .at favorable interest rates.. (t)he saving in interest is to be applied in part.. .to making possible lower rentals to low income tenants, who may also receive the benefit of rent subsidies. ..” Id. at 876 (emphasis added). We believe that a close reading of the statutory analysis there reinforces our conclusion here that if the construction of a project was subsidized by the government, then the “subsidized project” is outside the jurisdiction of the rent control board. However, “subsidized tenants” of an unsubsidized project — the case before the Amherst Board — are within the jurisdiction of the rent control board.
We believe that our reading of the relevant precedent is further reinforced *57 by considerations deriving from the legislative history of the legislative and regulatory framework here at issue.
In this regard, we believe that the Preamble of the Amherst By-Law, as enacted by the Senate and House of Representatives in General Court, is a powerful indication of the legislative intent of the by-law and instructive guidance on the impelling force which generated the legislation. In the Preamble, it is expressly stated that the General Court enacted this enabling legislation because a “serious public emergency exists in the Town of Amherst with respect to the availability and quality of the housing.” Amherst, Ma. By-Law, Ch. 72 §1 (Juné 6, 1986).. .. “(B)ecause of the continuing critical shortage of rental housing. . .unless residential rents become subject to review and control on a case-by-case basis.. .(the result will be) serious threats to public health safety and general welfare of the residents.. .of Amherst. ...” Amherst, Ma. By-Law, Ch. 72, §1 (June 6,1986).
As seen above, it is Crown Point’s essential contention that rental units which house rent-assisted tenants are “subsidized” within the meaning of the by-law, and as a result, are exempt from the jurisdiction of the Amherst Housing Review Board. We believe that to read the by-law in such an anomalous fashion would be defeating to the very persons for whom this legislation was designed to protect. In effect, “low and moderate-income families and elderly persons on fixed incomes” would be palpably penalized under the reading suggested by Crown Point if they should happen to receive rent assistance. Amherst, Ma. By-Law, Ch. 72 § 1 (June 6,1986). Such a reading would be clearly at variance with the animating impulse of the legislation and would place the Legislature and Town Officials in the quixotic position of having enacted a fatally flawed act in terms of the avowed legislative object to be achieved — giving rental relief to those most in need of such relief.
Because we are unwilling to attribute such a flawed approach to the draftsmen, we believe that the jurisdictional exemption for “rental units which a government unit.. .subsidizes” should be construed to refer to rental units constructed with government subsidies paid to the promoters of such projects and not as a “jurisdictional” exemption for rent-assisted tenants. Amherst, Ma. By-Law, ch. 72, §3(g)(2) (June 6,1986).
In sum, a rent control board shall not have jurisdiction over projects that have had their organic construction subsidized by the government (with the narrow exception of those projects “subsidized” through Section 202,221(d), or 236 of the National Housing Act). But, where there is no subsidy in the construction phase, the episodic and, perhaps, fleeting fortuity that rent assisted tenants may, from time to time, occupy these apartments should not serve to defeat the rent control regulatory reach of relevant rent control agencies. Thus, contrary to the findings of the District Court, we hold that the Amherst Housing Review Board maintains jurisdiction over the rental units in the Crown Point complex because the Crown Point complex is not “subsidized” within the meaning of the statute.
Having found error on this point, we return the case to the District Court for further proceedings not inconsistent with this Decision. It is so Ordered.

 A subsidiary issue in the case presents an asserted jurisdictional deficiency deriving from argued failure to raise certain questions at the administrative hearing before seeking judicial review.