Boston Rent Equity Board & others[1] *vs.* The Dime Savings Bank of New York, FSB, & others.[2]

Suffolk. December 9, 1992. - April 16, 1993.

Present: Liacos, C.J., Wilkins, Lynch, & O'Connor, JJ

*Mortgage,* Foreclosure. *Real Property,* Mortgage. *Injunction. Rent Control,* Controlled rental unit, Removal of unit from market, Eviction.

A mortgagee that has foreclosed its mortgagor's equity of redemption and has purchased the premises at a foreclosure sale must obtain a certificate of eviction before it may obtain possession of premises subject to the Boston rent control ordinance and occupied by a tenant of the former mortgagor. [49-52] Lynch, J., concurring.

CIVIL ACTION commenced in the City of Boston Division of the Housing Court Department on February 7, 1992.

The case was heard by *E. George Daher,* C.J., and was reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Barry B. Teicholz (James F. Creed, Jr., & Robert K. Gad, III,* with him) for the defendants.

*Kathryn B. Palmer* for Boston Rent Equity Board.

*Jeffrey W. Purcell (Margaret F. Turner* with him) for the interveners.

WILKINS, J. The plaintiffs commenced this action to enjoin the defendant (Dime) from seeking to recover possession of certain residential premises that are subject to the Boston rent control ordinance without first obtaining a certificate of eviction from the Boston Rent Equity Board (board). If, fol-

[1]Massachusetts Tenants Organization and City Life/Vida Urbana, interveners.

[2]Garden Management Co., Inc., and Dime Real Estate Services - Massachusetts, Inc. Each is a subsidiary of Dime Savings Bank. We shall refer to the defendants collectively as Dime.

415 Mass. 48                                                                     49

Boston Rent Equity Board *v.* Dime Savings Bank of New York, FSB.

lowing Dime's foreclosure as mortgagee on residential real estate and Dime's subsequent purchase of the real estate at a foreclosure sale, any former tenant (whose tenancy postdated the mortgage) did not voluntarily vacate the premises, Dime followed a practice of seeking injunctive relief to evict the occupant.

A judge of the Boston Housing Court issued an order preliminarily enjoining Dime "from making any further attempt by injunction . . . to recover possession for [*sic*] any rent controlled or vacancy decontrolled unit where Dime has not first obtained a Rent Board Certificate and enjoining [Dime] from failing to comply with Section 2.9 of Chapter X [of the Ordinances of the City of Boston]." Section 10-2.9 of the City of Boston Code, Ordinances, Title 10 (1988), lists those circumstances in which, upon application of a landlord, the board may issue a certificate of eviction after which the landlord may bring an action to recover possession of a rent controlled or vacancy decontrolled housing accommodation.[3] Pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), the judge reported the propriety of his interlocutory order to the Appeals Court. We granted the intervening plaintiffs' application for direct appellate review.

In *Attorney Gen.* v. *Dime Sav. Bank of New York, FSB,* 413 Mass. 284, 285 (1992), decided after the order was entered in this case, we held that Dime was not entitled to injunctive relief ordering tenants of its former mortgagors to vacate the premises. The preliminary injunction that the Housing Court judge issued was, therefore, proper. That is all that we must say to decide the propriety of the judge's order. There remains unanswered, however, the question whether Dime, or any other mortgagee that has foreclosed on residential premises that are subject to the Boston rent control law, must obtain a certificate of eviction from the board as a condition precedent to the commencement of a summary

---

[3]The bases stated in the ordinance for recovering possession of housing accommodations pursuant to a certificate of eviction are those authorized by St. 1970, c. 863, § 3 (*a*), amending St. 1969, c. 797.

process action against a tenant of a former mortgagor. The issue is one of importance, is fully briefed, and is likely to recur. We, therefore, shall decide whether Dime, as a mortgagee that has foreclosed its mortgagor's equity of redemption and has purchased the premises at a foreclosure sale, must obtain a certificate of eviction before it may obtain possession of premises that are subject to the Boston rent control ordinance and occupied by a tenant of the former mortgagor. We conclude that it must.[4]

Dime relies on several common law propositions that we conclude are not dispositive of the issue. Dime has no contractual relationship with the tenants of its former mortgagors. Dime has neither demanded nor accepted any rent from the occupants of the premises and has refused to enter into a landlord-tenant relationship with them. In short, Dime argues that, because there is no landlord-tenant relationship, (a) the occupants have no contractual rights against it, (b) no occupant of such premises is a tenant, and (c) there is no rental agreement that is subject to Boston's rent control law. None of these points, even if correct, is controlling in deciding whether Boston's rent control law requires Dime to obtain a certificate of eviction before seeking to evict such occupants.

---

[4]The judge in reporting the case stated the question as follows:

"Where (i) a bank is the holder of mortgage in statutory form and containing the statutory power of sale of real property used for residential purposes; (ii) mortgagor creates a landlord/tenant relationship with a third-party after the grant of the mortgage; (iii) the property would be classified as a 'rent controlled unit' or a 'vacancy decontrolled unit' under the Boston Rent Equity Ordinances while actual possession is maintained by the mortgagor and prior to the foreclosure of the mortgagor's right of redemption under the mortgage; (iv) mortgagor thereafter goes into default on the mortgage and the bank makes an entry for purposes of foreclosure and forecloses thereon; and (v) the mortgagor's tenant (occupant) remains in possession after having been served with a notice to vacate by the mortgagee, . . . is the bank obligated to obtain a Certificate of Eviction from the Boston Rent Equity Board prior to initiating legal proceedings to recover actual physical possession from such Occupant(s)?"

Section 10-2.9 of the ordinance requires that "[a] landlord seeking to recover possession of a controlled or vacancy decontrolled housing accommodation shall apply to the Board for a certificate of eviction." City of Boston Code, Ordinances, Title 10, § 10-2.9 (a) (1988). A "landlord" is defined in § 10-2.1 as "the individual who holds title to any controlled housing accommodation or decontrolled housing accommodation in any manner, including without limitation, a . . . corporation." A "housing accommodation" is defined in § 10-2.1, subject to exceptions which are not applicable here, as "any building, structure or part thereof or land appurtenant thereto, or any other real or personal property *rented or offered for rent* for living or dwelling purposes, within the City . . . " (emphasis supplied).

A literal reading of the definition of housing accommodation would result in the conclusion that, because Dime has not rented the various premises or offered them for rent, the premises are not housing accommodations. If that were so, Dime would not be a landlord, and the eviction certificate requirement of the rent control ordinance would be inapplicable. We reject such an approach to the meaning of the words "rented or offered for rent" as inconsistent with the objectives of Boston's rent control law. See St. 1970, c. 863, § 1. The premises involved here have been rented and will be rented again. Dime contemplates that its successor in title will lease the premises to tenants and grants that those premises will then be subject to rent control (presumably at new higher rents). In dealing with similar language in the Cambridge rent control law, we said that a "landlord or owner may not properly remove a rental unit from the rental market without board approval simply by declining to offer it for rent once it becomes vacant." *Rent Control Bd. of Cambridge* v. *Cambridge Tower Corp.*, 394 Mass. 809, 816 (1985). The Appeals Court similarly has rejected arguments of owners, where, in an analogous situation, an owner does not offer a unit for rent, thereby seeking to reduce the total number of rental units and thus qualify for the three-family owner-occupied exemption from the Cambridge rent control

law. See *Wheeler* v. *Rent Control Bd. of Cambridge*, 22 Mass. App. Ct. 482, 484 (1986); *Anastasi* v. *Rent Control Bd. of Cambridge*, 21 Mass. App. Ct. 606, 608 (1986); *Martin* v. *Rent Control Bd. of Cambridge*, 19 Mass. App. Ct. 745, 747-749 (1985). The various premises involved in this case continue to be housing accommodations, and Dime, as a landlord, must seek a certificate of eviction from the board before evicting the occupants of those premises.[5]

We neither express nor imply any view on what authority the board may have to decline to issue a certificate of eviction in these circumstances. Similarly, we do not express or imply any view on the extent, if any, to which the board may regulate the terms of any lease of the affected premises by Dime or its successor in title. We also have not expressed or implied any view on what effect, if any, G. L. c. 186, § 13 (1990 ed.), may have on the rights of occupants of the foreclosed premises.[6]

The order granting a preliminary injunction against the defendants is affirmed.

*So ordered.*

---

[5]Our view of the rent control status of premises under lease prior to foreclosure is that of other courts that have dealt with the same general question. The language of rent control provisions elsewhere may differ from that involved here, but the judicial approach to the issue is the same as ours. See *Administrator of Veterans Affairs* v. *Valentine*, 490 A.2d 1165, 1167 (D.C. App. 1985) (tenant of defaulting mortgagor who remains in her previously rented apartment after foreclosure sale is protected by statutory eviction restrictions); *Long Branch Banking Co.* v. *Howland*, 133 N.J. Eq. 315, 317-318 (1943) (limitations on removal of tenant are broad enough to cover attempted removal of occupant who was tenant of mortgagor whose rights were terminated by foreclosure); *Pfalzgraf* v. *Voso*, 184 Misc. 575, 578 (N.Y. Sup. Ct. 1945) ("[t]he foregoing definitions seem to lay stress upon the fact of *occupancy of housing accommodations* rather than upon the existence of a technical landlord and tenant relationship in the strict legalistic sense of that expression" [emphasis in original]).

[6]The motion judge recognized as a possible issue the question whether the amendment of G. L. c. 186, § 13, by St. 1973, c. 416, eliminated the automatic common law termination of tenancies by foreclosure.

LYNCH, J. (concurring). I agree that the preliminary injunction was proper and that is all we need to say to decide the case. I would go no further in view of what I regard as the questionable legal basis for the rent control statute and the dubious economic and social policies advanced to justify its existence.