CHICAGO TITLE INSURANCE COMPANY & others[1] *vs.* CITY OF
CAMBRIDGE & others[2].

Middlesex.    March 6, 1987. — June 8, 1987.

Present: GRANT, ARMSTRONG, & PERRETTA, JJ.

*Zoning*, Multiple dwelling. *Party Wall. Words*, "Townhouse development."

A single-family house, after being converted to four separate residential
units which were not divided by vertical party walls and which partially
overlapped one another, was not a "townhouse development" within the
meaning of a provision of the Cambridge zoning ordinance permitting
such a development in a zoning district where multiple family housing
was not a permitted use [286-288]; nor was a newly-constructed fifth
unit, added to the original structure, a townhouse within the meaning
of the ordinance, because the original building, with which it shared a
wall, was not a townhouse [288-289].

CIVIL ACTION commenced in the Superior Court Department
on July 14, 1983.

The case was heard by *Hiller B. Zobel*, J., on a motion for
summary judgment.

*Saul A. Schapiro* for Paula S. Thompson.

*Birge Albright* for the City of Cambridge.

*Richard d'A. Belin* (*John H. Henn* with him) for Chicago
Title Insurance Company & another.

ARMSTRONG, J.    This is an action for declaratory relief to
determine whether a structure at 58 Garden Street and 20 Bond
Street, Cambridge, containing five residential units is a "town-
house development" within the meaning of the Cambridge
zoning ordinance. Two of the plaintiffs are owners of "town-
houses" within the structure; the other plaintiff, Chicago Title
Insurance Co., has issued title insurance policies on the several

---

[1] Clifford B. Moller and Virginia L. Kahn.

[2] Brigitte Grafin Perponcher and Paula S. Thompson.

townhouses, in part insuring that the townhouses comply with the townhouse development provisions of the ordinance and are individually marketable without violation of the ordinance. The structure in question is located in a zoning district where multiple-family housing (i.e., larger than two-family) is not a permitted use unless it takes the form of a "townhouse development," the requirements of which will be described below.

In January, 1977, the plaintiff Moller obtained a building permit authorizing renovation or reconstruction of what was, at that time, a vacant single family house, into four "townhouses." Moller has sold two of the resulting "townhouses" (units A and D). Another (unit C) is rented to the defendant Perponcher. The fourth is styled a "two-family townhouse." Moller owns and, until late 1982, resided in one of its units (E); and the other (unit B) is rented to the defendant Thompson. Doubts whether the structure was a townhouse development within the zoning ordinance arose, not from a zoning enforcement action, but from questions relative to the application of Cambridge's rent control scheme to the residential units: one of Moller's claims was that units B and E were exempt from rent control as an owner-occupied, two-family house. See St. 1976, c. 36, § 3 (b) (6).[3] From a summary judgment favorable to the plaintiffs, Cambridge and the tenant Thompson have appealed.

The townhouse development provisions of the Zoning Ordinance of the City of Cambridge (1977) were "adopted to encourage the development of one and two-family townhouses . . . and [to] encourage development designs that are compatible with traditional neighborhood development patterns. The townhouse development use is intended to overcome obstacles to townhouse development . . . by providing special initiatives [incentives?] such as increased allowable floor space, greater leniency in setbacks, and the ability to subdivide lots to less than 5,000 square feet for the purpose of selling individual

[3] The proceedings concerning the application of rent control are detailed in *Moller* v. *Rent Control Board of Cambridge, post* 934 (1987), also decided today.

dwellings." Art. 11.11. The crucial definitions in art. 2, as amended in 1979,[4] are as follows:

> "*Townhouse Development.* The development (through conversion, addition to existing buildings, or new construction) of two or more semi-detached dwellings in one or more structures, with at least two semi-detached dwellings in each structure, on a single parcel of land."

> "*Dwelling, semi-detached (or Townhouse or Row House).* One of a series of buildings with a party wall or walls, common to adjoining buildings, which is constructed so that two opposite building faces have outside exposure and so that each has separate entrances from the outside, and each building of which is arranged, intended or designed as the home or residence of one or two families."

Several features of these definitions have been given inadequate attention by the plaintiffs. A multiple-family structure is not a townhouse development unless the dwellings are semi-detached. Semi-detached does not mean merely separated; if it did, apartments would qualify. Rather, a semi-detached dwelling is a separate building from the adjoining dwellings, lacking complete detachment only because it shares a party wall (or walls) with the adjoining building (or buildings). A party wall is a wall common to two adjoining buildings, in which the owners of the two buildings that share the wall have mutual easements of support. See *Phillips* v. *Boardman*, 4 Allen 147, 148-149 (1862); *Everett* v. *Edwards*, 149 Mass. 588 (1889); *Normille* v. *Gill*, 159 Mass. 427 (1893); *Fleming* v. *Cohen*, 186 Mass. 323, 326-327 (1904). By definition, a party wall is a bearing wall. It is inherently a vertical support.

---

[4] The definitions as they appeared in 1977, when the building permit was obtained, were slightly different, although, in our view, not in respects material to the case. The most important addition, in the view of the plaintiffs (and apparently in the view of the judge) was the addition of the parenthetical words in the definition of "townhouse development," because of its suggestion that townhouses could be achieved through conversion of existing buildings.

Floors and ceilings, although they may divide adjoining dwellings, are not party walls. The term "semi-detached dwelling" is defined synonymously with "townhouse" or "rowhouse"; that, in combination with the references to "party walls" and to "two opposite building faces [that] have outside exposure," and the requirement that it be one of a series of buildings (and, hence, itself a building), make it plain that the ordinance contemplates the creation of townhouses in the commonly thought-of sense of that word.

The building schematics are in the record, and it is clear from them that the structure at 58 Garden Street/20 Bond Street is not a townhouse development within the meaning of the ordinance. The units are not divided by vertical party walls, and the plaintiffs do not contend otherwise. Four of the units (A, B, C, and E) have areas that overlie other units, separated by floors and ceilings instead of by walls.[5] All of the units are to some extent overlapped by others. Unit D is a newly constructed add-on to the side of the original house. The dividing wall between it and the original house may be a party wall[6] (the record does not warrant a definite conclusion on the point). Nevertheless, unit D is not a townhouse within the meaning of the ordinance because the original building with which it shares the wall is not a townhouse (that is, it is no longer designed, as the townhouse ordinance requires, as a residence for either one or two families). The original single-family residence, although converted to four separate residential units,

---

[5] Unit E is the second residential unit in the "two-family townhouse" consisting of unit B and unit E. Its overlap of unit B is therefore of no significance, but it overlaps unit A almost as much as it does unit B. Unit E, in essence, is the third floor attic of the original house with an added deck that projects over units C and D.

[6] The common law concept of party wall envisioned its placement on the lot line between the adjoining buildings that use it for support. See Black's Law Dictionary 1011 (5th ed. 1979). A party wall under the ordinance, however, may support adjoining buildings whether the land has been subdivided or not (see art. 11.13 (E)(1) of the ordinance), although subdivision is contemplated and encouraged.

remains, manifestly, a single building.[7] We do not discern in the zoning ordinance's broad definitions of "building" and "structure"[8] an intention to obliterate the commonly recognized distinction between a building and an apartment within a building. We recognize that under our reading of the ordinance there may be relatively little practical scope for achieving townhouse development through conversion of existing houses, but the reference to that possibility, engrafted on the ordinace in 1979 (see note 4, *supra*), does not justify ignoring the plain import of the crucial terms in the definitions.

The judgment is reversed, and a new judgment is to be entered declaring that the property at 58 Garden Street/20 Bond Street does not constitute a townhouse development within the meaning of the Cambridge zoning ordinance.

*So ordered.*

---

[7] The city in its brief relies on the definition of party wall contained in the State Building Code, which, in its various incarnations (see 780 Code Mass. Regs. § 901.0 [1978]; 780 Code Mass. Regs. § 201.0 [1980]), maintains a common theme of a fire wall dividing two buildings. Use of those definitions would not alter the result.

[8] "Building" is defined in art. 2 of the ordinance as "[a]ny structure built for the support, shelter, or enclosure of persons, animals, chattels, or property of any kind." "Structure" is "a combination of materials assembled at a fixed location to give support or shelter, such as a building, bridge, trestle, tower, framework, retaining wall, tank, tunnel, tent, stadium, reviewing stand, platform, bin, fence, sign, flagpole or the like."