JANICE SLADE vs. MICHAEL E. MCLAUGHLIN, trustee,[1]
& another.[2]

Middlesex.  March 10, 1988. — May 19, 1988.

Present: HENNESSEY, C.J., LIACOS, NOLAN, & O'CONNOR, JJ.

*Rent Control*, Controlled rental unit, Removal of unit from market, Vacancy
   decontrol. *Cambridge. Municipal Corporations*, By-laws and ordi-
   nances, Rent control.

Where an apartment unit had not been rented or offered for rent from some-
   time prior to 1975, or at least four years prior to the 1979 effective date
   of an ordinance of the city of Cambridge which placed a restriction on
   the removal of rental units from the residential housing market, and had
   not thereafter been rented at any time prior to its owner's combining it
   in 1985 with another to make a single unit, the first apartment was not
   a "controlled rental unit" within the meaning of the ordinance, and
   consequently, it was not necessary to obtain a removal permit from the
   city's rent control board before combining it with the second apartment.
   [435-436]
Where a unit in a four-family apartment building in the city of Cambridge had
   been validly removed from the residential housing market by its owner
   at a time when the city had no restriction on unit removal, and had
   thereafter been combined with another unit to make a single apartment,
   it was held that the building was to be considered a three-unit property
   free of rent control in accordance with § 3 (b) (6) of the Cambridge
   Rent Control Act, if the owner of the premises occupied one of the
   units. [436-437]

CIVIL ACTION commenced in the Cambridge Division of the
District Court Department on August 22, 1985.

The case was heard by *James W. Bailey*, J.

[1] Trustee of the Inman Trust.

[2] The rent control board of Cambridge. The tenant named only the board
as a defendant in her original District Court complaint. The trustee of the
current owner was added as a defendant in the tenant's amended complaint.
Following the adverse ruling by the District Court, the board, unlike the
trustee, chose not to appeal. The board did, however, submit an amicus
brief to this court.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*George P. Butler, III (Joan E. O'Connor* with him) for Michael E. McLaughlin, trustee.

*John J. Barter* for the plaintiff.

*Patricia A. Cantor,* for Rent Control Board of Cambridge, amicus curiae, submitted a brief.

HENNESSEY, C.J. This case involves a structural merger of two apartments in a rent-controlled building in Cambridge (city). At issue are the propriety of this merger and the continued status of the building as rent controlled. We conclude that the apartments' merger was lawful. We also conclude that the building in question may, under certain circumstances, be free from rent control. We reach this conclusion by construction of the authorizing statute as well as the relevant city ordinance and regulations.

The plaintiff (tenant) has occupied a third-floor apartment in the three-story rent-controlled building at 67 Inman Street in the city since 1971. In March, 1985, she filed a complaint with the rent control board of Cambridge (board), alleging that the then building owners unlawfully had structurally merged the two second-floor units. She claimed that the merger removed a unit from the market without prior attainment of a removal permit as required by Ordinance 966, in c. 23 of the Code of the city of Cambridge. The board scheduled a hearing to determine if the "four family house [at 67 Inman Street had] been converted into a three family house in violation of Ordinance 966 and regulations pertaining thereto."[3]

---

[3] The removal permit requirement first appeared in Ordinance 926, of August 10, 1979. Ordinance 926 was subsequently incorporated as amended by Ordinance 966, of June 29, 1981. Ordinance 966, in turn, was amended in respects not material here by Ordinance 980, of April 16, 1982. Current codification is at c. 23, § 1 (c), of the city code. See *Slade v. McLaughlin,* 24 Mass. App. Ct. 778, 779 & n.3 (1987).

The building's continued status as a rent-controlled property is the ultimate issue presented in this case. If it can be shown that the property has been converted into a three-family building, the units within it could be exempted from rent control under § 3 (b) (6) of the Cambridge Rent Control Act if one of the units is owner-occupied. See St. 1976, c. 36, as amended by St. 1985, c. 399.

A hearing examiner heard testimony and made findings. He found that the property at 67 Inman Street was listed with the board in 1970 as a four-family building pursuant to c. 842 of the Acts of 1970. Chapter 842 was replaced in 1976 by the Cambridge Rent Control Act (Act). St. 1976, c. 36, as amended by St. 1985, c. 399. See *Flynn* v. *Cambridge*, 383 Mass. 152, 154 (1981). He also found that unit 2F had been "vacant since at least prior to 1975 until the present." He further found that the landlord who owned the building up until November of 1984 chose not to rent out unit 2F because he believed that the unit would be rented by undesirable tenants. The examiner found that the building was sold in November, 1984, and again in December, 1984. The latter purchasers "without benefit of . . . a Removal Permit, did remove a closet, break down a party wall between units 2F and 2R, remove a kitchen and bath from those units, and in every respect did merge and combine those two units in such a way as to prevent habitability as separate units."[4] The examiner recommended that the board rule that units 2F and 2R were unlawfully merged in violation of Ordinance 966 and board regulations,[5] and that the building continued to be a four-unit rent-controlled property.

The board rejected the examiner's recommendation. The board noted that the effective date of the first version of Ordinance 966, see note 3, *supra*, was August 10, 1979. Because unit 2F had been removed from the rental market prior to that date, the board ruled that its merger with unit 2R did not violate Ordinance 966. The board made no explicit ruling regarding whether the building should be considered a three-unit or a four-unit property.

---

[4] The December, 1984, purchasers sold the building to the current owner and defendant in June, 1985, during the course of this litigation.

[5] Regulation No. 48-03: "The combination of two or more controlled rental units by the elimination of bath or kitchen facilities, or by structural changes which prevent habitability as separate units, requires a removal permit (s) . . ."

Regulation No. 48-04: "When two or more units have been combined, as defined by Regulation 48-03, without a removal permit, the building in which the units are located shall not be considered a two-family or three-family house pursuant to section 3 (b) (6) of the Rent Control Act."

The tenant filed an action in District Court seeking, pursuant to § 10 of c. 36 of the Acts of 1976, as amended by § 3 of c. 399 of the Acts of 1985, judicial review of the board's ruling, and also seeking a declaratory judgment. She requested an order stating, in effect, that the building's units would remain rent controlled even if one of them came to be occupied by the owner. See St. 1976, c. 36, § 3 (b) (6). A District Court judge determined that the board erred in ruling that Ordinance 966 had not been violated. The Appeals Court reversed on this point, thereby reinstating the board's ruling, see *Slade* v. *McLaughlin*, 24 Mass. App. Ct. 778 (1987), but neither of the courts below directly addressed whether the building now should be considered a three-unit or a four-unit property. We granted the tenant's application for further appellate review.

The Appeals Court correctly determined that there was no need to acquire a removal permit prior to merging unit 2F with unit 2R. We look here to the Act as well as the related city ordinance and regulations. Section 3 (a) of the Act defines rental units as "any building, structure, or part thereof . . . rented or offered for rent for living or dwelling purposes." Section 3 (b) in turn defines controlled rental units as all rental units with certain nonapplicable exceptions. Unit 2F was not "rented or offered for rent" from sometime prior to 1975 through March of 1985, when it was merged with the recently vacated unit 2R. By not renting unit 2F or offering it for rent, the prior landlord placed it beyond the reach of the Act by removing it from the statutory definition of rental unit during a time when no regulation of unit removal existed. Ordinance 966 and its predecessor reach only controlled rental units. Unit 2F was not a rental unit at any time after 1975, and, therefore, not a controlled rental unit. It was never subject to Ordinance 966 or its predecessor, and it was not necessary to obtain a removal permit prior to merging it with unit 2R.

Nothing in *Rent Control Bd. of Cambridge* v. *Cambridge Tower Corp.*, 394 Mass. 809 (1985), is contrary to our conclusion that it was unnecessary to obtain a removal permit prior to merging unit 2F with unit 2R in the circumstances of this

case. In *Cambridge Tower Corp.*, rental units which had been subject to Federal regulation establishing maximum rentals, and therefore within one of the exceptions to controlled rental unit status, lost their excepted status in June of 1983, when Federal regulation of them ceased. The units in that case, unlike unit 2F here, were, at all relevant times, rental units within the meaning of the Act. *Id.* at 816. We rejected the argument that some of the units could be removed from the market by not offering them for rent as of and after June 1, 1983. *Id.* at 815-816. Ordinance 966 prohibiting such removal without a permit was in effect at that time. In this case, in contrast, there was no restriction on unit removal when unit 2F ceased to be offered for rent.

The differences between *Cambridge Tower Corp.* and this case also illustrate that our determination that no permit was necessary to merge unit 2F into unit 2R in this case, does not, as the tenant argues, add a "vacancy decontrol" provision to the Act. The differing outcomes in *Cambridge Tower Corp.* and this case simply reflect changes in the state of the law. At the time that unit 2F ceased to be offered for rent, and therefore was placed outside the reach of the Act, no restriction on unit removal existed. When the owners in *Cambridge Tower Corp.* sought to cease offering their units for rent, Ordinance 966 required that they first obtain a permit. Current owners too may not remove their units by not offering them for rent without first obtaining a permit. Our decision does not alter this. It does not create "vacancy decontrol."

As noted above, the tenant's complaint requests an order stating, in effect, that the building at 67 Inman Street does not come within the rent control exception for three-unit owner-occupied buildings contained in § 3 (b) (6) of the Act. However, because unit 2F was validly removed from the market at a time when there was no restriction on such removals, we conclude that the building now is to be considered a three-unit property. This case is distinguishable from those cited by the tenant in which it was determined that four-unit buildings had not been converted properly into three-unit buildings. See *Anastasi* v. *Rent Control Bd. of Cambridge*, 21 Mass. App. Ct.

606, 608-609 (1986); *Martin* v. *Rent Control Bd. of Cambridge*, 19 Mass. App. Ct. 745, 750 (1985); *Lamb* v. *Rent Control Bd. of Cambridge*, 17 Mass. App. Ct. 1038, 1039 (1984). In *Anastasi, supra,* and *Lamb, supra,* although the buildings physically were converted into three-unit structures, the units merged to accomplish this, unlike unit 2F here, were subject to Ordinance 966. In *Martin, supra,* the Appeals Court rejected the argument, inapplicable to the facts of this case, that an owner's occupancy of two independent units converted a four-unit building into a three-unit building.

In sum, it was unnecessary to obtain a removal permit prior to merging unit 2F with unit 2R. It follows that the building at 67 Inman Street now is to be considered a three-unit property, which will be free of rent control if the owner of the premises occupies one of the units. The matter is remanded to the District Court for entry of a judgment consistent with this opinion.

*So ordered.*