ANTONIO FIGUEIREDO *vs.* RENT CONTROL BOARD OF
CAMBRIDGE & others.[1]

No. 87-1240.

Middlesex. October 12, 1988. — December 16, 1988.

Present: WARNER, CUTTER, & FINE, JJ.

*Rent Control,* Controlled rental unit, Exemption. *Cambridge. Municipal
   Corporations,* Rent control.

Rental units in Cambridge, newly created in 1978 in a building that was
   lawfully vacant, were exempt from rent control by virtue of § 3 (*b*) (2)
   of the Cambridge rent control act, St. 1976, c. 36, which exempts from
   rent control units constructed after January 1, 1969. [664-666]

CIVIL ACTION commenced in the Superior Court Department
on December 11, 1986.

The case was heard by *John F. Moriarty,* J.

*Patricia A. Cantor (Lynn Weissberg* with her) for the defend-
ants.

*Wallace E. Thurston (Anita E. Cohen* with him) for the
plaintiff.

WARNER, J. This is an appeal by the rent control board of
Cambridge (board) and tenants from a judgment of the Superior
Court which determined that the twelve rental units owned by
the plaintiff at 9 Magazine Street (property) are not subject to
St. 1976, c. 36, the Cambridge rent control act (Act).

We recite the undisputed relevant facts. For many years,
the property, a three-story building, had been operated as a
thirty-three room rooming house with shared bathroom
facilities. In 1975, the then owner was given permission by
the Cambridge board of zoning appeal to convert the property

---

[1] Tenants of rental units owned by the plaintiff.

to thirteen apartments.[2] No action was taken by the owner pursuant to that grant. In January, 1977, a fire destroyed a portion of the third floor of the property. On July 18, 1977, an engineer for the city inspected the property, declared it to be a fire hazard, and recommended that it be repaired at once or demolished. The property was then uninhabited. A building permit for the conversion of the property to thirteen apartments was issued on July 21, 1977. The owner took no action under this permit and on September 2, 1977, the plaintiff bought the property.

In October, 1977, the plaintiff began work to convert the property to twelve three- and four-room apartments. An occupancy permit was issued by the city building department on May 10, 1978, and the job was completed in June, 1978.

In December of 1981, and January of 1982, hearings were held by a hearing officer of the board to determine the rent control status of the property. The hearing officer did not complete his task, the case was not considered by the board, and consequently no ruling was made. In May of 1986, pursuant to "special case" requests by hearing officers of the board, a hearing was held on the status of the twelve rental units. Thereafter, the hearing officer recommended, and the board ruled, that the units are subject to rent control. The plaintiff appealed to the Superior Court where a judge, after consideration of the administrative record, see St. 1976, c. 36, § 10, as appearing in St. 1985, c. 399, § 3; G. L. c. 30A, § 14; *Amari* v. *Rent Control Bd. of Cambridge*, 21 Mass. App. Ct. 598, 600 n.6 (1986), filed a memorandum and order in which he concluded that the board's decision was erroneous as matter of law. See G. L. c. 30A, § 14(7)(c). It is from the ensuing judgment that the board and the tenants appeal.

---

[2] The board of zoning appeal noted in its decision that the owner had maintained an active lodging house to the date of decision but, in the spring of 1974, the building had suffered heavy fire loss, and the owner faced financing problems "because of the type of tenants attracted to lodging houses." We infer that the property was in some fashion repaired after the 1974 loss, but the record offers no specific information.

Under § 3(*b*)(2) of the Act, "rental units the construction of which was completed on or after January [1, 1969]," are exempt from rent control. At the relevant times, the board had no regulation concerning the application of this exemption.[3] The board has, however (apparently relying on three decisions of the Cambridge Division of the District Court), since the early 1970's taken the position that rental units may be exempt under § 3(*b*)(2) only if the units have been so substantially rehabilitated as to be the equivalent of new construction. The test, the board maintains, is whether the building is so completely changed and rebuilt that it is a new building. Applying this standard to the changes the plaintiff made to the property, the hearing officer found that based on the plaintiff's testimony alone, the work done, though significant, did not rise to the level of new construction. Her finding was premised on what she characterized as the retention of significant parts of the property which had existed before the fire of 1977. The board adopted that finding, which was crucial to the ruling that the twelve rental units are subject to rent control. On appeal, the plaintiff concedes that the findings made by the hearing officer and adopted by the board are supported by substantial evidence. See G. L. c. 30A, § 14(7)(*e*).

The Superior Court judge concluded that the board's focus on the lack of novelty of some parts of the rehabilitated property was misplaced. Rather, he said, the relevant inquiry should have been whether new rental units had been created. Under the plain language of § 3(*b*)(2), the judge held, it is the rental unit which must be newly created and not the building in which it is located. On this foundation, the judge reasoned that at the time of the plaintiff's purchase there were no rental units in the property because it was then uninhabitable for reasons not the fault of the plaintiff or the prior owner.[4] The twelve rental

---

[3] The board now has what its counsel describes as a "built from the ground up" rule. Regulation 13-01, effective February 18, 1988, provides in relevant part: "Rental units the construction of which was completed on or after January [1, 1969,] . . . shall mean the creation of additional housing units by building a housing unit where none exists."

[4] The judge noted that at the relevant times there was no removal permit requirement for rent-controlled units. See *Slade* v. *McLaughlin*, 402 Mass. 432, 433 n.3 (1988).

units which the plaintiff created were of a type which never existed before,[5] the judge concluded, and were, therefore, exempt as units constructed after January 1, 1969.

The board and the tenants say that the "complete rebuilding" standard has long been followed and that it is applied on a case-by-case basis. While we give great weight to the interpretation of the Act by the board, see *Amari* v. *Rent Control Bd. of Cambridge*, 21 Mass. App. Ct. at 604-605, that principle is one of "deference, not abdication." *Vincent* v. *Rent Control Bd. of Cambridge*, 23 Mass. App. Ct. 927, 927 (1986), and cases cited. "[C]ourts will not hesitate to overrule agency interpretations of [statutes] when those interpretations are arbitrary, unreasonable or inconsistent with the plain terms of the [statute] itself." *Polednak* v. *Rent Control Bd. of Cambridge*, 397 Mass. 854, 858-859 (1986).

Here, the judge concluded that the board's ruling contradicted the plain language of § 3(*b*)(2). The board and the tenants argue that the judge's reasoning and conclusion are inconsistent with the decisions in *Rent Control Bd. of Cambridge* v. *Cambridge Tower Corp.*, 394 Mass. 809 (1985), *Chicago Title Ins. Co.* v. *Cambridge*, 24 Mass. App. Ct. 285 (1987), and *Moller* v. *Rent Control Bd. of Cambridge*, 24 Mass. App. Ct. 934 (1987). None of the cases is apposite. First, *Chicago Title* involved only the question whether a structure containing five residential units qualified as a townhouse development within the meaning of the Cambridge zoning ordinance. 24 Mass. App. Ct. at 285.[6] Second, in the *Moller* case the argument was not made that the board's construction of § 3(*b*)(2) was erroneous as matter of law. The only question raised and addressed by the court was whether the hearing officer's findings supported the board's conclusion that two of the units were not "new" construction. 24 Mass. App. Ct. at 935. Next, citing *Cambridge Tower,* the board and tenants

---

[5] Each unit had its own kitchen, bathroom, living room and one or two bedrooms.

[6] The decision does recite factual background helpful to full understanding of the related *Moller* case, which dealt with the question whether certain of the units were subject to rent control.

contend that the vacancy of the property after the fire of 1977 did not decontrol the existing units because the Act does not include any provision for vacancy decontrol. That argument comes from a misreading of *Cambridge Tower*. The vacancies involved in that case occurred during periods when removal of a rental unit from the market required a removal permit from the board. 394 Mass. at 816. *Slade* v. *McLaughlin*, 402 Mass. 432, 436 (1988). See note 4, *supra*. In this case, on the other hand, as in *Slade*, the vacancies occurred during a time when no restriction on rental unit removals from the market existed. 402 Mass. at 436.

The board and the tenants go to some length to distinguish *Vincent* v. *Rent Control Bd. of Cambridge*, 23 Mass. App. Ct. 927 (1986), a case involving the application of a different exemption in § 3(*b*)(2) of the Act regarding conversion from non-housing to housing use after January 1, 1969. Contrary to the board's and the tenants' assertion, the judge did not rely on that case other than to support a statement of the manifest purpose of the § 3(*b*)(2) exclusions. To the extent that *Elma Realty Co.* v. *Woods*, 169 F.2d 172 (lst Cir. 1948), a case arising under the Federal Emergency Price Control Act of 1942, has any application at all, it is readily distinguishable. There, apartments damaged by fire were repaired to make them fit for habitation, and the units remained subject to rent control even when uninhabited. No new rental units were constructed.

In summary, at the time when the rooming house units ceased to be offered for rent — 1977 — no restriction on unit removal existed. The triggering event of removal occurred through no fault or subterfuge of the owners.[7] Those units which existed prior to the fire damage were not thereafter offered for rent. See *Slade* v. *McLaughlin*, 402 Mass. at 436. As the judge concluded, new apartments were created in the property (at considerable expense to the plaintiff) and qualified as exempt from rent control under the plain language of § 3 (*b*)(2) of the Act. Our holding is, of course, limited to the

---

[7] In *Slade* v. *McLaughlin*, *supra*, some time prior to 1975 the owner deliberately removed a rental unit from the market by not offering it for rent and "therefore . . . placed [it] outside of the reach of the Act." *Id*. at 436.

peculiar circumstances of this case. The board's expressed fear that this construction of the exemption could be manipulated to allow the recycling of old buildings and consequent exemption from future rent control is unfounded. Current owners may not remove rental units without a removal permit from the board. See *Slade* v. *McLaughlin, supra*; *Vincent* v. *Rent Control Bd. of Cambridge, supra* at 928.

*Judgment affirmed.*