34 Mass. App. Ct. 381                                    381

Fire Chief of Cambridge v. State Building Code Appeals Board.

FIRE CHIEF OF CAMBRIDGE & another[1] *vs.* STATE
BUILDING CODE APPEALS BOARD;
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY, intervener.

No. 91-P-1309.

Middlesex. December 15, 1992. - April 27, 1993.

Present: ARMSTRONG. KASS, & IRELAND. JJ.

*Fire Prevention. Building. Municipal Corporations,* Building inspection,
Fire department.

The Building Code Appeals Board's determination that the building in-
spector of a municipality and not the fire chief was responsible for en-
forcing a construction project's compliance with the State Building
Code was in harmony with the statutes for enforcement of the code and
was entitled to judicial deference. [381-385]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 15, 1990.

The case was heard by *John Paul Sullivan,* J.

*Birge Albright* for the plaintiffs.

*Jeffrey Swope* (*James M. Whalen* with him) for Massa-
chusetts Institute of Technology.

*Anthony E. Penski,* Assistant Attorney General, for State
Building Code Appeals Board, was present but did not argue.

KASS, J. On the basis of language appearing in G. L.
c. 148, § 26B, the fire chief of Cambridge claims exclusive
authority to determine what satisfies the requirements of the
State Building Code (the Code) for automatic fire warning
systems. We conclude, conformably with a decision of the
State Building Code Appeals Board (the Board) and the de-
cision of a Superior Court judge on review under G. L.
c. 30A, § 14, that the final authority to determine what con-

---

[1]City of Cambridge. The name of the fire chief is Thomas V. Scott.

382            34 Mass. App. Ct. 381

Fire Chief of Cambridge *v.* State Building Code Appeals Board.

stitutes compliance with the Code resides with the building inspector of the municipality, who in Cambridge is the commissioner of buildings and housing (the building commissioner). Accordingly, we affirm the judgment of the Superior Court.

The object of the controversy is a dormitory construction project[2] undertaken by the Massachusetts Institute of Technology (M.I.T.). Although the arcana of the Code dispute are interesting, we doubt that it will advance the jurisprudence of the Commonwealth to elaborate upon them. Distilled, the question is whether, as the fire chief insists, the Code requires sprinkler flow devices connected to an annunciator panel which would show the zone in which an alarm had been activated, or, as the building commissioner has ruled, it satisfies the Code to install water flow devices which trigger audible fire alarms throughout the entire building and would identify, on the master annunciator panel, in which particular wing a sprinkler had gone off. The system the fire chief prefers would identify more precisely where a fire appeared to be burning.

What the fire chief fixes upon is a one-sentence paragraph in G. L. c. 148, § 26B, as appearing in St. 1975, c. 676, § 2, which provides: "The head of the fire department as defined in section one shall enforce the provisions of this section."[3] Section 26B prescribes that a building occupied for

---

[2]More precisely, the project involved the conversion of a factory building into a four-wing dormitory, approximately fifty-seven feet high, and containing eighty-seven individual rooms.

[3]The reference to "section one" is to G. L. c. 148, § 1, as amended by St. 1945, c. 470, in which the phrase "head of the fire department" is said to mean, for purposes of c. 148, the "chief executive officer of the fire department in a city, town or fire district . . . ."

The full text of § 26B is as follows:

"Every building or structure not exceeding seventy feet in height above the mean grade erected or substantially altered to be occupied for residential purposes shall be protected with an approved automatic fire warning system in accordance with the provisions of the state building code. Such system shall include the features of automatic smoke detection in conjunction with the approved fire detection devices.

"The head of the fire department as defined in section one shall en-

residential purposes which is less than seventy feet high shall "be protected with an approved automatic fire warning system in accordance with" the Code.[4] Such a system, § 26B goes on to say, "shall include the features of automatic smoke detection in conjunction with the approved fire detection devices."

Even taken in isolation, it is less than certain that the verb "enforce" in § 26B ought to read as comprehending more than duties of compliance inspection and taking action to secure compliance if noncompliance is discovered. Perhaps the most cogent argument to be made for the fire chief is that the last paragraph of § 26B provides a right of appeal from a fire chief's action, including an "interpretation" under § 26B, to the Board. Why, one might might ask (although the fire chief does not), need there be a right of appeal from an interpretation of a fire chief if a fire chief does not have the last word on interpreting the Code? Among the answers to that question are that the fire chief may be involved in interpreting requirements that do not involve the Code, such as whether a building is used for residential purposes,[5] or may be interpreting what the approved plans and specifications for a building require. In this case, when the fire chief made an interpretation of the Code at variance with that of the building commissioner, M.I.T. timely exercised its § 26B right of appeal to the Board.

---

force the provisions of this section.

"Whoever is aggrieved by the head of the fire department's interpretation, order, requirement, direction or failure to act under the provisions of this section, may, within forty-five days after the service of notice thereof, appeal from such interpretation, order, requirement, direction, or failure to act, to the board of appeals as provided in the state building code and section twenty-three of chapter twenty-three B."

[4]A building higher than seventy feet must, under G. L. c. 148, § 26A, be protected by an automatic sprinkler system. M.I.T. had decided to equip its buildings with automatic sprinklers although they were less than seventy feet high.

[5]Suppose, for example, a caretaker's apartment in a building otherwise devoted to offices and a meeting center for single parents.

It is in the larger context of building laws and regulations that the position of the fire chief is exposed as wrong. Section 3 of G. L. c. 143 designates the building commissioner as the "administrative chief" for administering and enforcing the Code. That authority is restated in 780 Code Mass. Regs. § 107.2 (1980), which provides that a "building department shall have an administrative chief responsible for the administration and enforcement of [the Code]." Further, 780 Code Mass. Regs. § 108.1 provides that "[t]he building commissioner . . . shall enforce all the provisions of [the Code] and any other applicable [S]tate statutes, rules and regulations, or ordinances and by-laws, and act on any question relative to the mode or manner of construction . . . ."

Those statutory provisions dealing particularly with the promulgation of the Code and its administration, G. L. c. 143, §§ 93-100, emphasize as a goal attaining uniform Statewide standards. See *Shriners' Hosp. for Crippled Children* v. *Boston Redev. Authy.*, 4 Mass. App. Ct. 551, 560-561 (1976). So it is that G. L. c. 143, § 95(*a*), as inserted by St. 1984, c. 348, § 10, provides that the State Board of Building Regulations and Standards has, as an objective, "Uniform standards and requirements for construction and construction materials, compatible with accepted standards of engineering and fire prevention practices, energy conservation and public safety."[6]

Consistent with those statutory provisions, the Board in this case ruled that the "building inspector is the responsible individual who controls the issuance of the building permit and . . . must . . . take into account" the complex system of State statutes which "regulate the construction of buildings within the Commonwealth." In reviewing the decision of an administrative agency we give weight to its interpretation of the statutes under which it operates and the regulations

---

[6]In an effort to facilitate this goal, all State and local building inspectors are required by statute to attend a continuing educational program of instruction prepared and administered by the State Board of Building Regulations and Standards, the agency charged with promulgation of the Code. G. L. c. 143, § 99.

which it has formulated. *Manning* v. *Boston Redev. Authy.*, 400 Mass. 444, 453 (1987). *Worcester Sand & Gravel Co.* v. *Board of Fire Prevention Regulations*, 400 Mass. 464, 466 (1987). That principle, of course, is one of deference, not abdication. *Figueiredo* v. *Rent Control Bd. of Cambridge*, 26 Mass. App. Ct. 661, 664 (1988). Here, however, the decision of the Board is not arbitrary, capricious, or unreasonable but is in harmony with the statutes for the administration of the Code which we have described; the Board has reasonably resolved a surface inconsistency in § 26B.

On the view we have taken of the case, it is not necessary to review the correctness of the interpretation of the fire warning system provisions of the Code made by the commissioner and the Board. The Code interpretation problem, a matter of nuance, is a classic example of when the expert technical knowledge of an administrative agency comes to bear and should not be disturbed in the absence of powerful evidence to the contrary. We found no such evidence in the record of this case.

*Judgment affirmed.*