Connolly, J.
This matter arises out of a decision by the defendant, the Chelsea Housing Authority (“the CHA”), to terminate the plaintiff, Dolores Galeas’s (“Galeas”), Section 8 rental assistance. The CHA’s decision to terminate Galeas’s Section 8 rental assistance was a result of its finding, by a preponderance of the evidence, that Galeas had assaulted and battered a minor, thereby engaging in a violent criminal activity in violation of her obligations as a Section 8 recipient. Galeas filed a complaint with this Court seeking to overturn the CHA’s decision. The matter is now before this Court on the CHA’s motion for judgment on the pleadings. For the reasons that follow, the motion is ALLOWED.
BACKGROUND
The federal government, though the United States Department of Housing and Urban Development (HUD), provides rental subsidies to low-income tenants under the Section 8 Housing Assistance Program of the United States Housing Act, 42 U.S.C. §§1437 et seq. (1994 & Supp. I 1995). The purpose of the act is to provide “decent, safe, and sanitary dwellings for families oflower income.” 42 U.S.C. §1437 (1994).This program is administered through agreement with HUD by local agencies called public housing agencies (“PHA”). The CHA is one such local agency. Administration of Section 8 is the subject of federal statutory and regulatory provisions with which the CHA must comply. Under the Section 8 program, the tenant enters into a HUD-approved contract with the owner, a housing assistance payments contract, and an annual contributions contract that set out the terms by which the PHA will make rental subsidy payments to the owner. The tenant, having been approved by the PHA for participation in the program, executes a HUD-prescribed lease with the owner. This lease is signed by the tenant and owner. Additional provisions relating to other good cause termination of the tenancy by the owner, security deposits, and certain prohibited lease provisions are contained in an addendum.
The administrative record sets forth the following facts relevant to this Court’s decision. Galeas’s Section 8 voucher was issued in the state of Florida and is being administered by the CHA. She entered into the Section 8 rental subsidy contract with CHA on March 5, 2003. Her lease included a paragraph entitled, “When [Housing Assistance Payments] terminate” that reads, “The [CHA] may terminate program assistance for the family for any grounds authorized in accordance with HUD requirements.” Further, Galeas also signed the CHA’s “Obligations of Section 8 Program Participants,” and that grants the CHA the “discretion to terminate Section 8 housing assistance” if any of the 22 listed obligations are not met by the tenant. Galeas initialed each of the 22 obligations. Obligation 21 requires that “[flamily members must not engage in violent criminal activity.”
*150 HUD regulations, referred to in Galeas’s lease, grant the CHA and the housing owner the authority to terminate Section 8 assistance “for criminal activity by a household member as authorized by this section if the [CHA] determines, based on a preponderance of the evidence, that the household member has engaged in the activity, regardless of whether the household member has been arrested or convicted for such activity.” 24 C.F.R. §982.553(c).[1]
Violent criminal activity is defined as “any criminal activity that has as one of its elements the use, attempted use, or threatened use of physical force substantial enough to cause, or be reasonably likely to cause, serious bodily injury or property damage.” 24 C.F.R. §5.100.
According to a police report dated July 16, 2003, Galeas was involved in an altercation on a basketball court controlled by the CHA during which she assaulted an eleven-year-old girl. The police report indicated that when the officers arrived at the scene of the incident, several large groups of approximately 50-75 people had congested the area and they were yelling obscenities at each other. Other officers were called in because of the crowd and because some of the groups started to fight. It took approximately 10-15 minutes to restore order.
As a result of this incident, CHA decided to terminate Galeas’s participation in the Section 8 rental assistance program, citing her “violent criminal activity.” Galeas appealed their decision to the CHA, and a hearing was held on September 3, 2003. What follows is a summary of the testimony received at the hearing. The victim, who is the eleven-year-old daughter of CHA’s Resident Housing Manager, testified that she was standing near Galeas’s three-year-old son when he fell down. Galeas walked over to where these kids were playing and warned everyone on the basketball court to be careful of the small children. According to the victim, Galeas’s daughter and niece then walked over to Galeas and told her that the victim had insulted her. Then Galeas confronted the victim and the two argued. As Galeas began to walk away, the victim said, “whatever,” and at that point Galeas slapped her across the face two times. The victim slapped Galeas back once, and Galeas slapped the victim again. The victim’s mother, the CHA employee, testified that she witnessed Galeas slapping her daughter. She also testified that she called 911 and that she notified the CHA of the incident because she was aware that Galeas was a Section 8 tenant.
Galeas herself testified that her daughter approached her on the court and told her that her three-year-old son had been hit with a ball in the eye. Galeas testified that she warned the other children, including the victim, to be careful of the small children. Galeas also testified that her daughter then informed Galeas that the victim called Galeas a “bitch,” and at that point Galeas confronted the victim. According to Galeas, the victim “got in [her] face” and the two argued. Galeas testified that she believed the victim was older than eleven years old and was threatening to harm her children. Galeas testified that she started to walk away but when she heard the victim say, “whatever,” she thought the victim was going to continue to threaten her children and that is when she turned around and slapped her once and the victim slapped her back. Galeas’s daughter also testified. Galeas called her as a witness and only Galeas’s attorney examined the six-year-old. The daughter testified that the victim did not yell at Galeas and that both were speaking in “normal” voices.
In a letter dated October 9,2003, the CHA informed Galeas of its decision to uphold the termination of her Section 8 rental assistance. The hearing officer found that Galeas assaulted the victim, a minor, and that Galeas’s “only witness, namely [her] daughter, contradicted [her] own testimony.” The hearing officer also found that because a large crowd gathered, Galeas’s actions could have led to “a more serious situations (sic)” and others could have been injured.
On November 11, 2003, Galeas filed a Complaint in this Court pursuant to G.L.c. 30A, §14, requesting that CHA be preliminarily enjoined from terminating her Section 8 rental assistance. This request was denied because this Court (Grabau, J.) found that there was not a substantial likelihood that Galeas would prevail on the merits of her complaint. In her complaint, Galeas also requested that this Court set aside the CHA’s decision to terminate her rental assistance and require CHA to pay her moving expenses if she were to keep her Section 8 Voucher. This matter is now before this Court on the defendant, CHA’s, motion for judgment on the pleadings. For the following reasons, the motion is ALLOWED.
DISCUSSION
Decisions by the CHA are subject to review pursuant to G.L.c. 30A, §14. See, e.g., Rudow v. Comm’r of Div. Medical Assistance, 429 Mass. 218 (1999); Tarin v. Comm’r of Div. Medical Assistance, 424 Mass. 743 (1997). In such a review, the agency’s decision must be upheld unless it is, among other factors, unsupported by substantial evidence; based upon an error of law; in excess of the statutory authority or jurisdiction of the agency; or arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. G.L.c. 30A, §14(7). The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Coggin v. Massachusetts Parole Bd., 42 Mass.App.Ct. 584, 587 (1997); Boston v. Outdoor Advertising Bd., 41 Mass.App.Ct. 775, 782 (1996) (citing Merisme v. Bd. of Appeals on Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989)). In reviewing the agency decision, this Court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Iodice *151 v. Architectural Access Bd., 424 Mass. 370, 375-76 (1997) (citing G.L.c. 30A, §14(7)); Arnone v. Comm’r of the Dep’t. of Soc. Services, 43 Mass.App.Ct. 33, 34 (1997); Foxboro Harness, Inc. v. State Racing Comm’n, 42 Mass.App.Ct. 82, 87, rev. denied at 424 Mass. 1107 (1997); Cahalen v. Comm’r of the Dep’t of Employment and Training, 41 Mass.App.Ct. 26, 27 (1996); Van Munching Co. v. Alcoholic Beverages Control Comm’n, 41 Mass.App.Ct. 308, 309 (1996); Flint v. Comm’r of Pub. Welfare, 412 Mass. 416, 420 (1992).
The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Reg’l Vocational Sch. Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982) (citing Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Comm’n, 372 Mass. 152, 154 (1977)). “The approach is one of judicial deference and restraint, but not abdication.” Arnone, 43 Mass.App.Ct. at 34 (citing Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. 565, 572 (1996)). A court may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n, 401 Mass. 713, 721 (1988); Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm’n, 385 Mass. 651, 657 (1982).
Galeas’s complaint for judicial review asserts that the CHA’s decision to terminate her Section 8 rental subsidy is unlawful because it is (1) not supported by substantial evidence; (2) contrary to law; and (3) violative of Constitutional standards. Each of these claims is addressed below.
1. Unsupported by Substantial Evidence Claim
Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). “Most pertinently, ‘[u)nder the substantial evidence test, a reviewing court is not empowered to make a de novo determination of the facts, to make different credibility choices, or to draw different inferences from the facts found by the [agency].’ ” Hotchkiss, 45 Mass.App.Ct. at 696 (quoting Ret. Bd. of Brookline v. Contributory Ret. Appeal Bd., 33 Mass.App.Ct. 478, 580 (1992)); Hickey v. Comm’r of Public Welfare, 38 Mass.App.Ct. 259, 262 (1995). The key thrust of the substantial evidence standard is whether the determination was made, in the light of experience, i.e., “whether experience permits the reasoning mind to make the finding.” Hotchkiss, 45 Mass.App.Ct. at 698 (quoting New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 466 (1981)). “Consideration of whether an agency decision is supported by substantial evidence is on the entire administrative record and ‘take[s] into account whatever in the record fairly detracts from [the evidence’s] weight.’... At the same time, a court gives due weight to the experience and specialized competence of the agency.” Arnone, 43 Mass.App.Ct. at 34 (quoting New Boston Garden Corp., 383 Mass, at 466)); Foxboro Harness, Inc., 42 Mass.App.Ct. at 87; Salaam v. Comm’r of Transitional Assistance, 43 Mass.App.Ct. 38, 39 (1997) (citing Pyfrom v. Comm’r of Pub. Welfare, 39 Mass.App.Ct. 621, 624-25 (1996)); Cabalen, 41 Mass.App. at 21. On the other hand, “[t]he deference which an agency decision is due does not extend to an unreasonable interpretation of its regulations.” Salaam, 43 Mass.App.Ct. at 44 (citing Correia v. Dep’t of Pub. Welfare, 414 Mass. 157, 165 (1993)).
Galeas argues that the hearing officer should have considered that she slapped the victim in defense of her three-year-old son. The hearing officer found otherwise.[2] The only true point of contention between the parties is whether Galeas’s act of slapping the victim is grounds for the termination of her benefits. Galeas’s lease and the addendum make it clear that the CHA is allowed to terminate Section 8 assistance if a household member engages in “violent criminal activity.” Galeas contests the hearing officer’s determination that her actions constitute such “violent criminal activity,” and points to conflicting testimony. Yet the responsibility for determining the credibility and weight of conflicting evidence rests with the hearing officer. The CHA “had the additional benefit of observing the witnesses before judging their credibility. It is not for this court to substitute its judgment on questions of fact for that of the agency.” Southern Worcester County Reg’l Vocational Sch. Dist., 386 Mass, at 420-21, citing Olde Town Liquor Store, Inc., 372 Mass, at 154. In light of this standard, this Court finds that the CHA’s determination is supported by substantial evidence. [3]
2. Contrary to Law Claim
When construing a statutory provision, one must first look to the “common and ordinary meaning of the language used.” Van Munching Co. v. Alcoholic Beverages Control Comm’n, 41 Mass.App.Ct. 308, 310 (1996) (citing M.H. Gordon & Son, Inc. v. Alcoholic Beverages Control Comm’n, 371 Mass. 584, 589 (1976)). “The Code interpretation problem, a matter of nuance, is a classic example of when the expert technical knowledge of an administrative agency comes to bear and should not be disturbed in the absence of powerful evidence to the contrary.” Fire Chief of Cambridge v. State Bldg. Code Appeals Bd., 34 Mass.App.Ct. 381, 385, rev. denied at 415 Mass. 1105 (1993).
Galeas argues that it was contrary to law to find that her actions constitute “violent criminal activity.” Because Galeas’s slapping the victim was the “use of physical force substantial enough to cause, or be reasonably likely to cause, serious bodily injury,” this Court finds that the CHA’s determination that Galeas’s action constituted “violent criminal activity” are not contrary to law. 24 C.F.R. §5.100.
*152 3. Due Process Claim
Galeas challenges the nature of the examination of her witness as well as what she views as a conflict of interest because the victim’s mother is a CHA employee.
Galeas’s constitutional arguments are without merit. CHA provided Galeas with due process. The CHA first provided notice of the termination of her Section 8 rental assistance and informed her of her right to appeal in the July 30, 2003 letter. Galeas timely appealed and she was informed, in the CHA’s August 6, 2003 letter, that:
A hearing has been scheduled regarding your appeal for Wednesday, September 3,2003. It is important that you attend this hearing . . . The Appeal decision will be based upon the evidence produced at the hearing. It is most important that you bring to this hearing all documents that support your claim and any witness that can testify on your behalf.
You have the right to examine any documents in the CHA file that are relevant to the issues to be heard in the Appeal. . .
Enclosed with this letter is a copy of the CHA’s Policies and Procedures for Appeals. Please review this prior to hearing . . .
You may have legal representation for the Appeal. You must arrange for any representation yourself ... Certain agencies provide free legal assistance to persons who are income eligible . . .
During the hearing, Galeas was represented by counsel. She called one witness, her six-year-old daughter. Other evidence consisted of testimony by the CHA Leased Housing Coordinator, the victim’s testimony, testimony of the victim’s mother, Galeas’s testimony, Galeas’s daughter’s testimony, and Galeas’s file which included the police report. The sole factual question before the CHA was whether Galeas assaulted the victim.
Galeas contends that the hearing officer should not have relied on the testimony of her six-year-old daughter who, Galeas argues, was intimidated on the stand.[4] However, Galeas herself called her daughter as a witness and only Galeas’s attorney examined her. Further, there was ample testimony from the other witnesses to support the hearing officer’s determination.
Galeas also contends that she is being punished because the mother of the victim happens to work for CHA. The victim’s mother testified at the hearing that, although she was aware that Galeas was a Section 8 tenant because of her position at CHA, she had no access to Gaelas’s file or any relationship with the Section 8 department of CHA. Further, 24 C.F.R. §982.552(c)(ix) provides authority to agencies such as the CHA to terminate benefits if “the family has engaged in or threatened abusive or violent behavior toward PHA personnel.”
Because the CHA procedures require notice, a hearing and a “preponderance of the evidence” standard, this Court finds that Galeas’s due process rights were in no way curtailed. For the foregoing reasons, the defendant Chelsea Housing Authority’s motion for judgment on the pleadings is ALLOWED.
ORDER
It is hereby ORDERED that the defendant Chelsea Housing Authority’s motion for judgment on the pleadings is ALLOWED.

In the Tenancy addendum, attached to Galeas’s lease, there is also a section entitled, “Termination of Tenancy by the Owner.” This section reads, in pertinent part:
a. Requirements. The owner may only terminate the tenancy in accordance with the lease and HUD requirements.
b. Grounds. During the term of the lease . . . the owner may only terminate the tenancy because of. . .
3 . . . Criminal activity (as provided in paragraph c) . . .
c. Criminal activity or alcohol abuse.
1. The owner may terminate the tenancy during the term of the lease if any member of the household . . . commits any of the following types of criminal activity . . . (b) any criminal activity that threatens the health or safety of, or the right to peaceful enjoyment of their residences by, persons residing in the immediate vicinity of the premises:
(c) Any violent criminal activity on or near the premises!.]
3. The owner may terminate the tenancy for criminal activity by a household member in accordance with this section if the owner determines that the household member has committed the criminal activity, regardless of whether the household member has been arrested or convicted for such activity.

Galeas relies on Commonwealth v. Kivlehan, 57 Mass.App.Ct. 793 (2003), and Commonwealth v. Baseler, 419 Mass. 500 (1995). These cases address self-defense theories including the theory of the “defense of another.” Galeas testified at the hearing that her motive was defending her son from the victim.

Nor can this Court say that the CHA’s decision was arbitrary and capricious. Arbitrary and capricious agency action is “willful and unreasoning action without consideration and in disregard of facts and circumstances." Long v. Comm'r of Public Safety, 26 Mass.App.Ct. 61, 65, review denied, 403 Mass. 1101 (1988). The standard for a finding that the CHA's decision is arbitrary and capricious is not easily met. The record fails to support a finding that the termination of Galeas’s Section 8 rental assistance was arbitrary, capricious or erroneous, as a matter of law, or exceeded the lawful authority of the CHA. Where, as here, a decision is supported by substantial evidence in the record, it is not arbitrary or capricious as a matter of law. Cherubino v. Board of Registration, 403 Mass. 350, 359 (1988).

General Law c. 30A, §11(2) provides that “agencies need not observe the rules of evidence observed by courts, but shall observe the rules of privilege recognized by law.”